DOW CHEMICAL, USA, an Operating Unit of the Dow Chemical Company, Diamond Shamrock Corp., Ethyl Corporation, PPG Industries, Inc., Stauffer Chemical Company, Vulcan Materials Company, Louisiana Chemical Association

v.

CONSUMER PRODUCT SAFETY COMMISSION.

Civ. A. No. 781166.

United States District Court,
W. D. Louisiana,
Lake Charles Division.

Feb. 13, 1979.

Theodore L. Garrett and Corinne A. Goldstein, Covington & Burling, Washington, D. C., Gene W. Lafitte, John M. Wilson, and J. Berry St. John, Jr., Liskow & Lewis, New Orleans, La., George H. Robinson, Jr., Liskow & Lewis, Lafayette, La., Oliver P. Stockwell, Stockwell, Sievert, Vicellio, Clements & Shaddock, Lake Charles, La., for plaintiffs.

Charles R. McConachie, Chief, Consumer Affairs Section, Antitrust Division, Dept. of Justice, Washington, D. C., J. Ransdall Keene, U. S. Atty., Frances O. Allen, Asst. U. S. Atty., Shreveport, La., for defendants; Margaret A. Freeston, Acting Gen. Counsel, D. Stephen Lemberg, Asst. Gen. Counsel, David M. Melnick, Consumer Product Safety Commission, Washington, D. C., of counsel.

## MEMORANDUM RULING ON DEFENDANT'S MOTION FOR RECONSIDERATION

VERON, District Judge.

This court on September 28, 1978 issued a preliminary injunction, pending a final determination on the merits, prohibiting the Consumer Product Safety Commission (CPSC) from provisionally classifying perchloroethylene or any other consumer product pursuant to the regulations promulgated by the CPSC on June 13, 1978, 43 Fed. Reg.25658665. In our opinion dated November 1, 1978 this court determined that the CPSC's "Interim Policy and Procedure for Classifying, Evaluating and Regulating Carcinogens in Consumer Products" is a substantive rule subject to the advance notice and public comment requirements of the Administrative Procedure Act (APA), 5 U.S.C. § 553. This court further held that these administrative regulations were not issued in accordance with the APA's prior notice and opportunity for public comment procedures. *Dow Chemical v. Consumer Product Safety Comm.*, 459 F.Supp. 378 (W.D.La.1978).

On November 24, 1978 the CPSC filed a Notice of Appeal to the Fifth Circuit from our order granting the preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1).[1]

---

1. An order involving injunctive relief issued prior to the entry of a final judgment generally may be appealed under the statutory exception to the final judgment rule embodied in § 1292(a)(1) of the Judicial Code.

The CPSC now moves this court to reconsider and vacate its September 28, 1978 order pursuant to Federal Rule of Civil Procedure 60(b)(5) and (6) on the basis of a "Clarification of Commission Intent and Reopening of Comment Procedure" issued by the CPSC on December 20, 1978. Oral argument on this motion was set for January 30, 1979 but the court deferred to the parties' preference of submitting this motion to the court exclusively on written briefs.

■ In partial response to the CPSC's motion for reconsideration, plaintiffs have challenged this court's jurisdiction to entertain the motion on the grounds that the invoked provisions of Federal Rule of Civil Procedure 60(b) do not apply to the non-final order encountered here. This argument is convincing since Federal Rule of Civil Procedure 60(b), as amended in 1948, applies only to a "final judgment, order or proceeding." *See generally* II C. Wright & A. Miller, Federal Practice and Procedure §˙2852 at 145 (1973); 7 Moore's Federal Practice ¶ 60.20 at 242 (1978). Thus, the fact that a district court could grant a properly filed Rule 60(b) motion after an appeal has been filed [*See generally Lairsey v. Advance Abrasives Co.,* 542 F.2d 928, 932 (5th Cir. 1976); II C. Wright & A. Miller, Federal Practice and Procedure § 2873 at 265 (1973); 9 Moore's Federal Practice ¶ 203.11 at 736 n.12 (1978); Note, *Disposition of Federal Rule 60(b) Motions During Appeal,* 65 Yale L.J. 708 (1956)] is simply irrelevant to this case as is the fact that defendant has complied with the procedures endorsed by the Fifth Circuit in Rule 60(b) cases.[2]

The defendant in filing this motion for reconsideration is actually relying on the inherent power of the rendering district court to afford such relief from interlocutory judgments (here a preliminary injunction) as justice requires. Neither party, however, even mentions the relevant controlling Federal Rule of Civil Procedure, Rule 62(c). Rule 62(c) authorizes the trial court to suspend, modify, restore, or grant an injunction during the pendency of an appeal in injunctive cases.[3]

There is only one reported case that this court can locate involving the highly unusual situation where an appeal from a preliminary injunction is lodged before a motion for reconsideration is filed with the trial court. The Second Circuit in *Ideal Toy Corporation v. Sayco Doll Corp.,* 302 F.2d 623, 625 (2d Cir. 1962), held that the power of the trial court under Rule 62(c) is only to preserve the status of the case as it sits before the court of appeals and leave of the appellate court is required before the district court, during the pendency of an appeal, can modify an injunction:

> [T]his rule [Rule 62(c)] is described as "merely expressive of a power inherent in the court to preserve the *status quo* where, in its sound discretion, the court deems the circumstances to justify."

Of course, absent an appeal, a district court has complete power over its interlocutory orders . . .

Once the appeal is taken, however, jurisdiction passes to the appellate court. Thereafter the appellant is not unusually entitled as of right to present new evi-

---

**2.** When an appellant files a Rule 60(b) motion with a district court after an appeal has been noticed, he should also notify the appellate court that a motion for reconsideration has been filed with the district court and request that no action be taken on the appeal pending reconsideration by the district court. *Lairsey v. Advance Abrasives Co., supra,* 542 F.2d at 932.

The CPSC so notified the Fifth Circuit by filing a motion to stay the appeal herein on January 3, 1979. The Clerk of Court for the Fifth Circuit pursuant to Fifth Circuit Rule

10(a)(7) routinely stayed the appeal on January 16, 1979.

**3.** Federal Rule of Civil Procedure 62(c) states in pertinent part that "[w]hen an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party." *See generally* II C. Wright & A. Miller, Federal Practice and Procedure § 2904 at 315 (1973).

dence or argument to the trial court, which in the exercise of a sound discretion will exercise jurisdiction only to preserve the *status quo* as of the time of appeal. Appellant's proper procedure is then to request leave of the court of appeal to proceed in the lower court . . . But absent permission of the appellate court to reopen, sound judicial administration demands that unless the judge is satisfied that his order was erroneous he shall use his power under Rule 62(c) only to preserve the status of the case as it sits before the court of appeals.

(Citations omitted). This jurisdictional issue, as far as we know, has never been addressed by the Fifth Circuit. We, however, find the reasoning of the forceful dissent of Judge Clark in *Ideal Toy Corp. v. Sayco Doll Corp., supra,* 302 F.2d at 628, to be more compelling:

> The purpose and sole function of a preliminary injunction is to preserve the status quo pending litigation. Of course such an order in actual effect substantially alters the prior relations of the parties, so that the "status quo" that is actually preserved is one grounded on the court's estimation of the respective legal rights of the parties. The injunction preserves what the court believes to be the lawful situation. Thus if for any reason the court were to change its estimation of the validity of plaintiff's case, its estimation of the lawful status quo would also change. In such a situation, dissolving the preliminary injunction would be the proper way of maintaining the correct state of affairs. . . .
>
> I see, therefore, no basis for the rule now laid down that parties must seek leave of the Court of Appeals before raising questions of this nature with the district court. No rule commands such a practice, and no court has ever imposed such a limitation on the salutory functioning of Rule 62(c).

(Citations omitted). In our view, the arguments in favor of requiring appellate leave are unpersuasive. Can't a district court recognize non-meritorious Rule 62(c) motions? Isn't the trial court in a better posi-

tion to pass upon the issues presented in a Rule 62(c) motion considering its familiarity with the case and its reasons for granting the injunction?

■ The Fifth Circuit does not require appellate leave when a Rule 60(b) motion has been filed after an appeal has been noticed even in pre-mandate cases. *Lairsey v. Advance Abrasives Co., supra,* 542 F.2d at 732; *Ferrell v. Trailmobile, Inc.,* 223 F.2d 697 (5th Cir. 1955). Additionally, we find the recent United States Supreme Court opinion in *Standard Oil Company v. United States,* 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976), to be persuasive authority supporting our jurisdiction to consider this motion. There the high court first recognized the split of authority in the circuit courts and then held that a district court may entertain a Rule 60(b) motion without leave of the appellate court in post mandate cases. The Court in making its ruling specifically cited with approval a dissent by Judge Clark criticizing the appellate leave requirement in this analogous situation:

> The appellate-leave requirement adds to the delay and expense of litigation and also burdens the increasingly scarce time of the federal appellate courts. We see no reason to continue the existence of this "unnecessary and undesirable clog on the proceedings." *S. C. Johnson & Son v. Johnson,* 175 F.2d 176, 184 (CA 2 1949) (Clark, J., dissenting).

*Id.* at 19, 97 S.Ct. at 32. Subsequent to this decision at least one circuit court which previously required appellate leave, extended the *Standard Oil Company* rationale to apply to pre-mandate cases under limited circumstances. *Williams v. McKenzie,* 576 F.2d 566, 570 (4th Cir. 1978). We therefore hold that this court has jurisdiction under Federal Rule of Civil Procedure 62(c) to entertain defendant's motion to dissolve our injunction despite the fact that the defendant has not sought leave to proceed in the district court from the Fifth Circuit.

However, our determination that we have jurisdiction to consider CPSC's motion for reconsideration is a Pyrrhic victory for the

Commission, since on the merits the clarification proffered by the Commission does not in our opinion justify a reversal of our previous decision.

■ According to the Commission's brief filed herein, in light of the court's November 1 opinion the CPSC reexamined the "interim policy and procedure" and concluded that certain provisions should be clarified. Accordingly, defendant issued a "Clarification of Commission Intent and Reopening of Comment Procedure" on December 20, 1978 in order to explain its intent in issuing the interim statement and to describe the status of the document taking into consideration the court's issuance of the preliminary injunction. The court certainly does not question the good faith or integrity of the dedicated members of the Consumer Product Safety Commission in issuing this "Clarification of Commission Intent and Reopening of Comment Procedure." Once again, however, we address ourselves purely to the legal issue of compliance with the Administrative Procedure Act. After careful consideration, we hold that the "clarification" does not mandate suspension, modification or vacation of our previous order.

■■ The CPSC does not offer this clarification to prove its compliance with the notice and comment provisions of the Administrative Procedure Act. Rather this clarification is relied upon by the Commission to buttress its argument that the June 13, 1978 interim statement is a "statement of policy" which is specifically exempt from the pre-adoption notice and comment procedures, 5 U.S.C. § 553(b)(A), an argument to which the CPSC has steadfastly adhered throughout these proceedings. Agency policy can be developed either by the adoption of general rules or through case-by-case adjudication. *See generally* Note, *The Judicial Role in Defining Procedural Requirements for Agency Rulemaking*, 87 Harv.L. Rev. 782 (1972). When an agency, as here, chooses the rulemaking alternative, compliance with the Administrative Procedure Act is a mandatory prerequisite.

First off, the court is troubled as to the character and nature of this "clarification." Nothing in the clarification notice purports to amend or modify the specific terms of the interim regulations. The clarification notice appears to be a *post hoc* explanation of the CPSC's intent in issuing the interim regulations.[4] The interim regulations which the court previously held objectionable remain in effect and the clarification simply purports to explain the interim regulations. If the Commission intends to change the effect of its interim regulations, then those regulations should be rewritten and reproposed. Absent that, put simply, the interim regulations must be interpreted to mean what they say.

It is relevant to note that this clarification closely echoes the Commission's position regarding its intent to allow the rules to be subjected to challenge in subsequent administrative proceedings previously espoused in its briefs opposing both the temporary restraining order and preliminary injunction.

Even more importantly, as counsel for plaintiffs cogently note, certain language in the clarification notice is inconsistent with terms of the interim regulations in respect to a major substantive provision dealing with the regulation of "Category A" substances.[5]

---

4. The clarification notice states that the clarification is being announced "to clearly indicate its [CPSC's] intention in issuing the interim statement of policy and procedure." Clarification of Commission Intent and Reopening of Comment Period, pg. 5 (hereinafter referred to as Clarification). The Commission's December 21, 1978 brief states that the Clarification should "be read in conjunction" with the interim regulations.

5. The clarification notice states that a decision to classify a substance as a "Category A" substance means that the Commission has assigned it a higher priority for possible regulatory action than substances not so classified. Furthermore, "[t]he assumption that CPSC will 'act' with respect to any product *means only* that the Commission is likely to begin a rulemaking proceedings by publishing a proposed rule in the FEDERAL REGISTER."

Even assuming *arguendo* that this clarification notice was a consistent interrelated amendment to the original regulations, it would not prompt this court to vacate or modify its order. This is so since the position of the CPSC as reflected in this clarification is based on a misguided view of the law and our previous opinion.

The CPSC attempted to cure the interim regulations by isolating that portion of our November 1 opinion which reads:

The inference is inescapable that if perc possesses the relevant scientific characteristics enunciated in the regulations, it will be classified as a Category A substance. Defense counsel argues that CPSC will allow, before it takes final regulatory action, any person whose product might be regulated as a carcinogen to contend that the scientific principles embodied in the regulations are incorrect or unsupportable and therefore should not be applied. However, this argument is not supported by the regulations themselves. One searches in vain for something in the interim policy that guarantees affected persons the right to challenge the underlying premises reflected in those rules in subsequent proceedings. Under the regulations the issue at any hearing on a particular substance will not be whether the substance is a carcinogen, but rather whether the criteria established in Section 1040.22 have been met.

*Dow Chemical v. Consumer Product Safety Comm., supra,* 459 F.Supp. at 393. The CPSC now argues that since this notice of clarification expressly provides that the scientific principles embodied in the rules will be subject to challenge in subsequent proceedings, the court should vacate its preliminary injunction order.

However, the CPSC unwisely ignored other relevant portions of the court's opinion in formulating its clarification:

The court in resolving whether these regulations are statements of policy or

On the other hand, section 1040.22(a) of the interim regulations states that a substance "will be classified as Category A" if certain scientific conclusions are reached. Similarly, section 1040.41 of the interim regulations pro-

rules will not abandon common sense and equitable principles, but rather will recollect the basic purpose of the statutorily imposed requirements of notice and comment. The APA's rule-making procedures "were designed to assure fairness and mature consideration of rules of general application." *NLRB v. Wyman-Gordon Co.,* 394 U.S. 759, 764, 89 S.Ct. 1426, 1429, 22 L.Ed.2d 709 (1969).

Additionally, this court in determining the legal issue presented therein is guided by a substantial body of jurisprudence which announces several general principles to be utilized in distinguishing a policy statement from a rule:

(1) Is the announcement subject to change prior to its implementation? *Continental Air Lines, Inc. v. CAB,* 173 U.S.App.D.C. 1, 522 F.2d 107 (1974), *rehearing en banc,* 173 U.S.App.D.C. 1, 4, 522 F.2d 122, 125 (1975).

(2) Does the announcement focus the agency's attention on a fixed set of criteria that might have been formulated differently if there had been an opportunity for public comment? *Pickus v. U. S. Board of Parole,* 165 U.S. App.D.C. 284, 290, 507 F.2d 1107, 1113 (1974); *St. Francis Memorial Hospital v. Weinberger,* 413 F.Supp. 323, 329 (N.D.Cal.1975).

(3) Will the inquiry in subsequent rulemakings be whether the facts fit the alleged policy or will the policy itself be subject to challenge in such proceedings? *Pacific Gas & Electric Co. v. FPC,* 164 U.S.App.D.C. 371, 376, 506 F.2d 33, 38 (1974).

(4) Does the announcement have a substantial impact on regulated parties so as to make the process of public comment an important requirement? *National Motor Freight Association v. United States,* 268 F.Supp. 90, 96 (D.D. C.1967) (three judge court), *aff'd per*

vide that "it is reasonable to assume that CPSC will act to ban, or reduce to the lowest level attainable, the intentional addition to a consumer product of a Category A substance."

*curiam*, 393 U.S. 18, 89 S.Ct. 49, 21 L.Ed.2d 19 (1968); *National Helium Corp. v. FEA*, 569 F.2d 1137, 1145–46 (Em.App.1977); *Texaco, Inc. v. FPC*, 412 F.2d 740, 744 (3rd Cir. 1969). *Id.* at 391–392. All four of the above criteria should be considered in resolving whether a given agency action is subject to the APA notice and comment procedures. In advancing its argument based on this clarification the CPSC has forgotten three of the four factors upon which the court based its decision. Additionally, the fact that industry may be able to challenge a carcinogen classification and the validity of the underlying classification criteria at a subsequent hearing does not necessarily relieve the agency from the APA's notice and comment requirements. *See, e. g., Texaco, Inc. v. FPC*, 412 F.2d 740, 746 (3rd Cir. 1969).

Furthermore, plaintiffs have demonstrated that they will be adversely affected to a significant decree if the CPSC applies its interim regulations and classifies perchloroethylene as a Category A substance. *Dow Chemical v. Consumer Product Safety Comm., supra*, 459 F.Supp. at 389, 394. "Experience and common sense indicates that the implementation of this interim policy in proceedings involving individual consumer products will result in substantial loss of business for the plaintiffs as verified by the numerous affidavits filed herein." *Id.* at 393. This immediate and substantial harm distinguishes our case from the situation encountered in *Pacific Gas & Electric Co. v. Federal Power Comm.*, 164 U.S.App. D.C. 371, 380, 506 F.2d 33, 42 (1974), on which defendants heavily rely.

■ We are not cognizant of any reported case in which an agency has attempted to cure a district court adjudicated APA deficiency after the lodging of an appeal nor has any such case been brought to our attention by counsel. The court in making

today's ruling has not abandoned the common sense and equitable principles which guided our initial decision. And while we appreciate the CPSC's attempts to regulate suspected cancer-causing products through this "interim policy" and "clarification," any such attempts at regulation via rulemaking must conform to the Administrative Procedure Act. The CPSC asserts in its "clarification" that

It should be noted that at the time the Commission issued the interim statement of policy and procedure, it specifically considered the option of proposing the statement for adoption as a binding substantive (or legislative rule). Such a rule, if finally promulgated by the Commission after an opportunity for public comment, would have foreclosed further discussion of the scientific principles and regulatory policy outlined in the statement in subsequent proceedings involving individual substances. However, the Commission decided that it would not attempt to promulgate such a binding rule, but rather would, by means of the interim statement of policy and procedure, announce to the public the general policies which it would seek to establish in subsequent rulemaking proceedings.

Clarification at pgs. 5–6. This lawsuit brought on behalf of several plaintiffs is at least evidence of the dissatisfaction of a portion of the regulated industry with the path taken by the CPSC. However, the court in issuing the preliminary injunction and in handing down the decision is not attempting to guide the future direction of the CPSC, but rather simply resolving the legal issue of compliance with the APA. The court additionally notes that the other variables crucial for injunctive relief besides substantial likelihood of probable success on the merits (*i. e.* irreparable harm, impact on defendant [6] and the public inter-

---

6. At the time of the issuance of the preliminary injunction the CPSC represented to the court that it possessed other avenues for informing the public that the Commission is investigating certain consumer products other than provisional classification. The Commission at that time did not specify precisely the other alternatives and the court would not so speculate. *Dow Chemical v. Consumer Product Safety Comm., supra*, 459 F.Supp. at 394. In its clarification the CPSC expressly delineates its other routes:

While the Commission is prevented by the preliminary injunction from implementing

est) have not significantly changed since the issuance of our preliminary injunction. The parties now must await the Fifth Circuit's review of our preliminary injunction wherein the CPSC will, of course, be allowed to reurge their arguments.

### ORDER

For the reasons assigned this day in writing, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the motion for reconsideration filed by the defendant, Consumer Product Safety Commission, is denied.

the Interim Statement of Policy and Procedure through the provisional classification of substances about which a question of safety has been raised, it is continuing to carry out its statutory responsibility to receive and screen information concerning possibly carcinogenic substances, set priorities for evaluation of consumer products containing such substances, and carry out other internal activities, independent of and separate from the statement of policy and procedure, related to addressing possible hazards associated with carcinogenic substances in consumer products. The Commission also will continue to take regulatory action, on a case-by-case basis, when it determines such action is necessary to protect the public health and safety. Clarification at pgs. 9–10. Thus, it is even more apparent now than at the time of our initial decision that the Commission will not be harmed by the granting of plaintiffs' motion for injunctive relief.