In re Otto Henry FINTEL, Alma Maxine Fintel fka Alma Maxine Phillips, Debtors.

Otto H. FINTEL, Plaintiff,

v.

The STATE OF OREGON, Jane Huston, in her capacity as Director of the Department of Commerce of the State of Oregon, Warren Hearle, in his capacity as Administrator of the State of Oregon Builders Board, Candace Sullivan and Dan Nichols, Defendants.

Bankruptcy No. 379–03617.
Adv. No. 80–0348.

United States Bankruptcy Court,
D. Oregon.

March 3, 1981.

Clarence R. Kruger, Asst. Atty. Gen., Salem, Or., for State of Oregon, Jane Huston and Warren Hearle.

Ruth Cinniger, Portland, Or., for plaintiff Fintel.

Defendants Sullivan and Nichols did not appear.

### FINDINGS SETTING ASIDE JUDGMENT VOIDING BUILDERS BOARD ORDERS

DONAL D. SULLIVAN, Bankruptcy Judge.

The defendant, State of Oregon, filed a motion under Rule 60(b) FRCP to set aside the judgment and determination of December 23, 1980, entered in this case on the grounds of mistake. This judgment and determination voided orders of the State Builders Board as having been entered in violation of the automatic stay provisions of 11 U.S.C. § 362(a). The Builders Board orders determined that the plaintiff, the debtor, was liable to claimants, Candace Sullivan and Dan R. Nichols for the sums of $750 and $500, respectively, under ORS 701.145—701.150 regarding builders.

Plaintiff in his response requested that the Court stay the Board from enforcing its order as a matter of discretion if the judgment is set aside.

I find that the described orders of the Builders Board did not violate the automatic stay provisions of 11 U.S.C. § 362(a), and that the judgment previously entered in this Court should be set aside because it was mistakenly entered. I further find that it would be unfair to enjoin the claimants and the Board from enforcing the Board's order against the contractor's bond.

This Court, in previously determining that the orders of the Builders Board had violated the automatic stay, mistakenly construed the wording of the Board's orders as an attempt to impose post-bankruptcy liability on the debtor. In spite of the peremptory wording of those orders, this construction was incorrect because 11 U.S.C. § 524(a) discharges the debt and prohibits enforcement against the debtor. The Board's orders, contrary to the unfortunate initial interpretation, can only be enforced against the surety.

11 U.S.C. § 362(a) does not stay actions against property which is not a part of the estate. A corporate surety bond which is provided by a debtor in order to obtain a contractor's license from the State is not property of the estate. *In the Matter of Buna Painting and Drywall Co., Inc.,* 503 F.2d 618 (9th Cir. 1974). 11 U.S.C. § 362(a) does not stay actions to enforce dischargeable debts against third parties. Even Chapter 13 does not stay actions against third

parties who guarantee debts in the normal course of their business such as a bonding company. Third party liability is not affected by the bankruptcy. 11 U.S.C. § 524(e). Under 11 U.S.C. § 362(b)(4) and (5), the automatic stay does not restrain the exercise of police or regulatory powers of the state except where enforcement of a money judgment is sought. Government agencies should not be enjoined from performing regulatory duties if their actions will not reduce the estate or interfere with the bankruptcy. *In the Matter of Shippers Interstate Service, Inc.*, 618 F.2d 9, 13 (6th Cir. 1980); *In re Bel Air Chateau Hospital, Inc.*, 611 F.2d 1248 (9th Cir. 1979).

Chapter 701 of the Oregon Revised Statutes, which created the Builders Board, is a remedial statute passed for the protection of those persons dealing with builders. *Robinson v. Builders Board of Oregon*, 20 Or.App. 340, 531 P.2d 752, 754 (1975). The statute is a consumer act designed to protect the public from financially irresponsible builders. *Seaton v. Builders Board*, 29 Or.App. 467, 564 P.2d 710, 711 (1977). Neither the claimant nor the Board interfered with the plaintiff's bankruptcy or did anything to reduce the bankruptcy estate. The legislative history of the Code, therefore, supports application in this case of the regulatory exception to the automatic stay to enforce consumer law designed to protect the public. Sen.R.No.95–989, P. 52 (1978), H.R.No.95–595, P. 343 (Reprinted in Collier on Bankruptcy [15th Ed.] Appendix Vols. 1, 2), U.S.Code Cong. & Admin.News, p. 5787.

■ It would be inappropriate, as a matter of discretion, to enjoin the Board or the enforcement of the Board's orders against the surety until the distribution of the bankruptcy estate. The purpose of the bond, like any construction bond, is to protect the intended beneficiaries if the contractor fails to perform his duty for any reason including bankruptcy. The debtor's need to preserve the bond for future licensing should as a matter of fairness be subordinate to this purpose.

The debtor, in any event, has not made an adequate showing that the estate will have sufficient assets to pay the claimants, or that adequate reason exists to deny to the claimants the immediate payment state law is intended to require from the surety. The file shows that there are claims in excess of $90,000, including priority claims exceeding $15,000, and assets of approximately $11,000. According to the trustee's report, closure of the case will be delayed to recover an additional asset. Also, the trustee will probably object to any exaggeration of the anticipated dividend based upon the claim filed by the *debtor* on behalf of Claimant Sullivan in the amount of $7,600 because Builders Board in determining Candace Sullivan's claim found it to be "unbelievable and excessive" and reduced it to $750.

■ The debtor's fear that the Builders' registration may be revoked by the Board as an indirect consequence of loss of their bond because of not paying a claim which has been discharged in bankruptcy does not provide legal justification for an injunction. The Builders Board may require the usual bond as a condition to a future registration but it may not revoke the license because of bankruptcy or condition future registration on payment of debts that have been discharged in bankruptcy. 11 U.S.C. § 525; *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). The debtor cannot use his bankruptcy to hold the bond as hostage for a fresh start. This question, in any event, may be moot because cancellation of the bond by the insurance company apparently has already occurred.

For the foregoing reasons, the judgment of December 23, 1980, entered in this case, should be vacated and set aside and a new judgment entered dismissing the complaint and action.