In the Matter of DORE & ASSOCIATES CONTRACTING, INC., Plaintiff,

v.

AMERICAN DRUGGISTS' INSURANCE COMPANY, et al., Defendants.

DORE & ASSOCIATES CONTRACTING, INC., Plaintiff,

v.

REDEVELOPMENT AUTHORITY OF the CITY OF WAUSAU, and the City of Wausau, Defendants.

AMERICAN DRUGGISTS' INSURANCE COMPANY, Plaintiff,

v.

R. Steven LUTTERBACH, Elizabeth A. Lutterbach, Arthur P. Dore, Shirley A. Dore, et al., Defendants.

Adv. No. 85 C 256 C.

United States Bankruptcy Court, W.D. Wisconsin.

Oct. 15, 1985.

John Hebert, Lambert, Leser, Herbert, Dahm, Giunta & Cook, P.C., Bay City, Mich., Gerald Nichol, Lee, Johnson, Kilkelly & Nichol, S.C., Madison, Wis., for Dore & Associates.

Thomas Durkin, Chicago, Ill., for Lutterbachs.

Kenneth W. Kable, Braun, Kendrick, Finkbeiner, Schafer & Murphy, Saginaw, Mich., for Redevelopment Authority of the City of Wausau; City of Wausau.

Jim F. White, Hill, Lewis, Adams, Goodrich & Tait, Birmingham, Mich., for American Druggists.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

The matter now before the court arises out of a 1981 contract ("the contract") between the debtor Dore Associates ("Dore") and the Redevelopment Authority of the City of Wausau ("Wausau") for building demolition and site development. The contract was terminated by Wausau on or about October 22, 1981. Shortly thereafter Dore filed a chapter 11 petition in the Bankruptcy Court for the Eastern District of Michigan.

On November 23, 1981, Wausau filed suit against American Druggist Insurance Company ("ADI"), the surety for Dore, in the Circuit Court for Marathon County, Wisconsin. On September 7, 1982, the Bankruptcy Court for the Eastern District of Michigan issued a temporary restraining order to prevent Wausau from prosecuting its pending suit. On September 30, 1982, the temporary restraining order against Wausau was made a preliminary injunction.

As of March 1984 three adversary proceedings relating to the underlying dispute between Wausau and Dore were pending in the Bankruptcy Court for the Eastern District of Michigan. On March 13, 1984, the Michigan bankruptcy court consolidated the three adversary proceedings. Various cross claims have been filed by the different parties to these proceedings. On March 13, 1985, the District Court for the Eastern District of Michigan transferred venue of all three adversary proceedings to the District Court for the Western District of Wisconsin. Thereupon these proceedings were referred to the bankruptcy court.

The matter now before the court is a motion by Wausau to lift the preliminary injunction so that Wausau may prosecute its Marathon County suit against ADI. The debtor, Dore, is not a party to the Marathon County litigation at this time nor apparently are any of the other parties to the three consolidated adversary proceedings. Wausau argues that the preliminary injunction was improperly issued and that in any event the reasons for which the preliminary injunction was originally issued are no longer valid. ADI argues that the preliminary injunction was proper when

originally issued and should be continued in effect in order to prevent wasteful and duplicative litigation. ADI reasons that the same facts and law will necessarily have to be considered in both the consolidated adversary proceedings in this court and in the Marathon County trial if the state action is allowed to proceed.

■ Under the Bankruptcy Act of 1898 suits against joint tortfeasors, guarantors or sureties could not be stayed since such actions did not involve the debtor or property of the bankruptcy estate. This situation has been changed by the broad grant of in-personam jurisdiction contained in 28 U.S.C. § 1334(b), and the equally broad grant of power under section 105(a) of the Code whereby the court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). It is now beyond dispute that the bankruptcy court may enjoin actions against sureties and other codefendants of the debtor in appropriate circumstances. *See In Re Rustic Manufacturing Inc.*, 55 B.R. 25 (Bankr. W.D.Wis.1985); · *In Re Larmar Estates, Inc.*, 5 B.R. 328 (E.D.N.Y.1980); 2 *Collier on Bankruptcy* ¶ 105.01–105.04 (15th ed. 1985). Since bankruptcy is not designed to protect third party guarantors the question in such proceedings is always whether such an order is necessary or appropriate. *In Re Larmar Estates, Inc., supra.*

■ Two separate inquiries need to be undertaken before the bankruptcy court may issue a preliminary injunction pursuant to section 105(a). The first inquiry is jurisdictional and the second inquiry is the appropriateness of the injunction under traditional standards applicable to the issuance of preliminary injunctions. The jurisdictional test essentially requires the court to determine that the matter sought to be enjoined "arises in" or is "related to" a case under title 11, and that a preliminary injunction is "necessary or appropriate" to carry out the provisions of the Code. 28 U.S.C. § 1334(b); 11 U.S.C. § 105(a); *see In Re Rustic Manufacturing, Inc., supra.*

To make this determination the court must find that failure to enjoin an action against a codefendant of the debtor would either adversely affect the bankruptcy estate or would result in detrimental pressure being brought to bear on the debtor through a third party. *In Re Precision Colors Inc.*, 36 B.R. 429, 431 (S.D.Ohio 1984); *In Re Lahman Manufacturing Co. Inc.*, 33 B.R. 681, 683 (D.S.D.1983); *In Re Otero Mills, Inc.*, 25 B.R. 1018, 1021 (D.N.M.1982); *In Re Rustic Manufacturing, Inc., supra.* Although section 105(a) grants the bankruptcy court broad jurisdictional power to issue injunctions in appropriate cases it is an extraordinary exercise of discretion to use that power to stay an action against a third party which does not directly involve the debtor. *In Re Brentano's, Inc.*, 36 B.R. 90, 92 (S.D.N.Y.1984).

The traditional test for preliminary injunctive relief applies in bankruptcy proceedings as well. As it is most frequently formulated this test requires the court to consider four factors before granting a preliminary injunction. These factors are: 1.) irreparable harm to the movant if a preliminary injunction does not issue; 2.) the reasonable likelihood that the movant will be successful on the merits of the case; 3.) the likely balance of harm as between the moving party and other parties; and 4.) the public interest. *Reinders Bros., Inc. v. Rain Bird Eastern Sales Corp.*, 627 F.2d 44, 48 (7th Cir.1980); *Technical Pub. Co. v. Lebhar-Friedman, Inc.*, 729 F.2d 1136 (7th Cir.1984); *In Re J & L Transport, Inc.*, 47 B.R. 51 (Bankr.W.D.Wis.1985); *In Re Rustic Manufacturing, Inc., supra; In Re Otero Mills, Inc., supra; In Re Landmark Air Fund II*, 19 B.R. 556, 560 (N.D.Ohio 1982).

■ Irreparable harm in the bankruptcy context refers to either irreparable harm to the interest of a creditor or irreparable harm to the bankruptcy estate. Of these two irreparable harm to the bankruptcy estate (or the debtor's ability to reorganize) is clearly of greatest relevance to the court. This follows from the fact that the bankruptcy court's jurisdiction to issue a prelim-

inary injunction depends initially on a finding of harm to the bankruptcy estate or to the debtor's ability to reorganize. *See In Re Precision Colors, Inc., supra.* This is true in bankruptcy proceedings involving sureties as well since the primary purpose of an injunction in favor of a nondebtor surety is to serve the chapter 11 process and not per se to insulate the surety from its joint and several liability. *See In Re Precision Colors Inc., supra* at 431–432. Even when it is alleged that irreparable harm to the debtor's reorganization will result it is necessary to present strict proof of the facts and circumstances proving the likelihood of irreparable harm. Speculative and conclusory allegations are clearly insufficient. *See In Re Uiterwyk Corp.,* 36 B.R. 533, 534 (M.D.Fla.1983).

It will only rarely be found that a corporate surety or guarantor will be irreparably harmed because of failure to enjoin creditors from directly proceeding on guarantees. This is because the liability of the surety is independent of the liability of the debtor. Further the surety or guarantor, if required to satisfy a claim, will be subrogated to the rights of the principal creditor. 11 U.S.C. § 509(a); *In Re Woerner,* 19 B.R. 708, 711 (Kan.1982). *See In Re Brentano's Inc., supra; In Re Larmar Estates, Inc.,* 5 B.R. at 331.

On the other hand irreparable harm may be found in cases where a solvent guarantor is the only source of funds which are necessary to a successful reorganization of the debtor. *See In Re Lahman Manufacturing Co. Inc., supra.* Similarly it is appropriate to enjoin actions against guarantors or other third parties liable on the debtor's obligations where the third party is so closely related to the debtor that pressure inevitably will be brought to bear on the debtor. *See First Federal Savings & Loan Association of Little Rock v. Pettit,* 12 B.R. 147 (E.D.Ark.1981).

This court shared the same concerns in *In Re Rustic Manufacturing, supra,* where a preliminary injunction was granted to prevent a creditor from proceeding against the guarantors of a debtor corporation's obligations. Unlike the proceeding at bar the guarantors in *Rustic* were the principal officers and sole shareholders of the debtor. Two of the guarantors were a significant source of funds for the debtor and suits on the guaranties would have caused a major disruption to the debtor's reorganization prospects. Under the circumstances that existed in *Rustic* the risk of irreparable harm was great enough that a preliminary injunction was warranted.

"Reasonable likelihood of success on the merits" similarly requires a clear and specific showing of likely success. When the debtor moves to enjoin actions against third party guarantors the debtor must show a reasonable likelihood of successful reorganization. *See In Re Brookfield Tennis Inc.,* 29 B.R. 1, 3 (E.D.Wis.1982); *Landmark Air Fund, supra.* Likewise when the guarantor or surety seeks a preliminary injunction "probability of success on the merits" has been held to mean that the guarantor must show a probability that the debtor's plan will provide for 100% payment of the underlying obligation. *In Re Larmar Estates Inc., supra.*

■ Two other factors are frequently, though not universally considered by the bankruptcy courts. The "balance of harm" factor requires the court to consider the relative harm as between the surety and other creditors of the debtor. In *In Re Brentano's Inc.,* the court held that where the only effect of not enjoining a third party suit against a guarantor would be the likely substitution of the surety's claim against the debtor for the underlying claim of the principal creditor, the circumstances did not justify depriving the creditor of its contractually bargained for right to seek relief directly against the guarantor. 36 B.R. at 92. Similarly, in *In Re Fintel,* 10 B.R. 50, 52 (D.Or.1981) the court found that it was unfair to enjoin enforcement of actions against the issuer of a construction bond since the express purpose of such bonds is to protect the beneficiary from any failure to perform on the part of the debtor including bankruptcy. The *Fintel* court found this to be particularly compel-

ling where the debtor had not made an adequate showing that the estate would have sufficient assets to pay the underlying claims and where the debtor had not shown any other adequate reason such as harm to the estate which would require enjoining actions against the surety. *Id.*

■ The last factor, "public interest," requires a balancing of the public interest in successful bankruptcy reorganizations with other competing social interests. In proceedings affecting sureties and guarantors the courts must balance the public interest in successful reorganization of the debtor against the strong public interest in protecting the integrity of surety bonds and related commercial instruments. *See In Re Fintel, supra.* In *In Re Page*, 18 B.R. 713, 717 (D.D.C.1982) a case analogous to the proceeding at bar, the district court reversed a decision of the bankruptcy court restraining a creditor from cashing a letter of credit. The court found that neither the letter of credit nor its proceeds were property of the estate. The court also found the promise of the issuer of the letter of credit to be independent of the underlying contract. Further, the court found that no harmful effect on the debtor's reorganization had been shown. Most significantly the district court determined that the commercial integrity of letters of credit would be frustrated by even a preliminary injunction against payment. In order to maintain the viability of letters of credit it was necessary that the *bank* should bear all associated risks and not the beneficiary of the letter of credit. *Id.* The rationale of the *Page* decision is directly applicable to the proceeding at bar, since the purpose of a construction bond is to protect the beneficiary from all risks of nonperformance, including the risk that the contractor may become insolvent and file bankruptcy. *See In Re Fintel, supra.*

■ In applying the principles discussed above to the facts of this proceeding it is not possible to state that the Bankruptcy Court for the Eastern District of Michigan erred in its initial determination that a preliminary injunction was necessary and appropriate under the circumstances that then existed. In September 1982 when the preliminary injunction was issued the debtor Dore was faced with the possibility of having to defend numerous actions then pending against it. The basis for the preliminary injunction was the court's belief that forcing the debtor to defend the numerous actions against it or its surety ADI all over the United States would so seriously interfere with the time of the debtor's key employees that successful reorganization would be impossible. (*See* findings of fact, conclusions of law and order regarding change of venue February 15, 1985.) Based on its initial determination that reorganization would be impossible if the debtor were forced to defend the numerous law suits then pending against ADI it is clear that the bankruptcy court had jurisdiction under 11 U.S.C. § 105(a) to issue the preliminary injunction. This is so because the court found that defending the numerous law suits would "adversely affect the bankruptcy estate" or would "detrimentally affect the debtor because of pressure brought to bear via a third party."

Similarly on the basis of the facts as then existed the court could have found that the standard for issuance of a preliminary injunction had been met. By finding that reorganization would be impossible the court in effect found that "irreparable harm" would occur if the pending actions against the debtor and ADI were not temporarily enjoined.

■ The court could also have found the "likelihood of success on the merits" even though it was not absolutely certain at that time that reorganization would be successful. In the early stages of bankruptcy when it is uncertain if reorganization is feasible or not the bankruptcy court must have broader latitude in determining whether to grant injunctive relief. *In Re Otero Mills, Inc., supra.* It is particularly appropriate that all uncertainties should be resolved in the debtor's favor during the period when the debtor is entitled to file a plan of reorganization. *In Re Lahman Manufacturing Co., Inc., supra.* In this

case the Michigan bankruptcy court obviously made an initial determination that reorganization was feasible. This determination has been borne out by the events which have transpired.

The court likewise could have found that the "nonmandatory" factors had been met. Specifically it was entitled to determine that the harm to the debtor's ability to reorganize outweighed a temporary delay in the ability of creditor to pursue claims against ADI. The court also could have found that the public interest in attempting to reorganize a major business enterprise then outweighed the public interest in ensuring the integrity of construction bonds. Thus it cannot be said that the original decision of the Michigan bankruptcy court to issue the preliminary injunction was erroneous.

■■■■■ A bankruptcy court in the exercise of its inherent equitable powers has authority to modify or vacate its own interlocutory orders. *A & A Sign Company v. Maughan*, 419 F.2d 1152, 1155 (9th Cir. 1969). This follows from the general rule of law that an interlocutory order may be modified or rescinded by the court at any time before entry of a final decree. *See John Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82, 88, 42 S.Ct. 196, 198, 66 L.Ed. 475 (1922). The court has inherent power to modify preliminary injunctions if warranted by the facts and circumstances of the case. 19 Fed.Procedure L.Ed. §§ 47:138, 47:139 at 527–528 (1983).

■■■■■ Even a permanent injunction may be revoked or modified by an appropriate court as circumstances change. *See* 42 Am.Jur.2d Injunctions § 324 at 1126–1127 (2d ed. 1969). In deciding whether to modify or dissolve an injunction the court is charged with the exercise of the same discretion that it exercised in granting or refusing the injunction initially. The decision of the court in such a matter is made in the exercise of sound judicial discretion and will be disturbed on appeal only if clearly erroneous. *Id.* § 325, pages 1127–28. The test for determining whether to modify or dissolve a permanent injunction is whether the conditions which made the injunction appropriate have changed to such an extent that the injunction no longer serves the purpose for which it was initially granted. *See United States v. Swift & Co.*, 286 U.S. 106, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932). The burden of proof in such a case is upon the party seeking to modify or rescind the injunction.

■■■■■ The rigorous test for modification of a permanent injunction is not applicable to preliminary injunctions. This is so because a preliminary injunction is frequently issued before any meaningful decision has been made on the merits of the case. The purpose and sole function of a preliminary injunction is to preserve the status quo, and if for any reason a court changes its estimation of the merits of the case it may dissolve the preliminary injunction. *See Dow Chemical v. Consumer Products Safety Commission*, 464 F.Supp. 904, 907 (W.D.La.1979). Absent an appeal a court has complete power over its interlocutory orders and it lays within the power of the court to consider newly presented evidence. *See Ideal Toy Corp. v. Sayco Doll Corp.*, 302 F.2d 623, 625 (2d Cir.1962). A court has power at any time prior to entry of final judgment to reconsider any portion of its decision or reopen any part of a case even if the matter which is reconsidered was initially subject to interlocutory appeal. *See Marconi Wireless Telephone Co. of America v. U.S.*, 320 U.S. 1, 47, 63 S.Ct. 1393, 1415, 87 L.Ed. 1731 (1943).

> [A] preliminary injunction ... is, by its very nature, interlocutory, tentative, provisional, ad interim, impermanent, mutable, not fixed or final or conclusive, characterized by its for-the-time-beingness. It serves as an equitable policing measure to prevent the parties from harming one another during the litigation; to keep the parties while the suit goes on, as far as possible in the respective positions they occupied when the suit began.

*Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 742 (2d Cir.1953).

The burden of proof on a motion to dissolve a preliminary injunction should not invariably fall upon the moving party. Although the movant bears the burden of proof on a motion to dissolve a permanent injunction, such a motion seeks to disturb a judicial decree which is based on a fully adjudicated and finally decided state of facts. Such circumstances necessarily require the moving party to bear the strict burden of proof of changed circumstances. Since a preliminary injunction is based only upon a judicially estimated state of facts it would be inequitable to arbitrarily assign the burden of proof to the party seeking relief from the injunction. This is particularly true in this proceeding where it is undisputed that the circumstances which form the basis for the initial issuance of the preliminary injunction have now "largely evaporated."[1]

Section 362(g) of the Code also lends support to the proposition that the burden in this proceeding should be upon ADI. That section provides that in a hearing for relief from the automatic stay the party opposing such relief has the burden of proof on all issues except the issue of the debtor's equity in property. 11 U.S.C. § 362(g) *See also* Ginsberg, Bankruptcy ¶ 3403, at 3044 (Prentice Hall 1985). Since a preliminary injunction under 11 U.S.C. § 105 is an extraordinary remedy which reaches matters not covered by the automatic stay of section 362 it is even more appropriate that the party opposing relief from the injunction should bear the burden of proof as to the propriety of leaving the preliminary injunction in effect.

The parties have presented very little hard evidence in this proceeding. Therefore, the resolution of this dispute is to a considerable extent dependent on a determination of which party bears the burden of persuasion on the motion. Because the enjoining of third party actions not involving the debtor is such an "extraordinary" exercise of the court's power under section 105(a) and because of the radical change in circumstances presented in this instance it is fair that the burden of persuasion in this proceeding should fall upon ADI. Since that is so the following conclusions are warranted:

1. This court has continuing jurisdiction to maintain the preliminary injunction in effect because the jurisdictional test of section 105(a) continues to be met. Relief from the injunction will to at least some degree "adversely affect the bankruptcy estate" or "detrimentally affect the debtor because of pressure exerted via a third party." This is so because the debtor's officers and employees will face the time and inconvenience attendant upon their involvement in the Marathon County proceedings in addition to their involvement in the consolidated adversary proceedings now pending in this court. The debtor will likely suffer some increase in legal costs as well.

2. The injunction should nevertheless be dissolved because ADI has failed to prove that the circumstances which now exist justify the extraordinary remedy of a preliminary injunction. Most importantly ADI has failed to prove that either it or the debtor will suffer irreparable harm if the preliminary injunction is not continued in effect. It has introduced no evidence tending to prove that either the bankruptcy estate or the debtor's ability to reorganize will be irreparably harmed because the debtor's principal employees will be required to appear in two sets of proceedings. At best, it has introduced speculative and conclusory allegations on this point which cannot provide the basis for finding irreparable harm. *See Uiterwyk*, 36 B.R.

---

**1.** In his order changing venue to this district, Judge Spector stated his conclusion of law that the main reason for consolidating all major lawsuits against Dore and ADI in the Michigan bankruptcy court (ie: the harm to the debtor from having to defend numerous suits all over the country) "has now evaporated." The court stated further, by way of dictum, its belief that the injunction barring such lawsuits (in other forums) should likewise "evaporate."

at 534. Similarly, ADI has not shown how the debtor or the estate would be harmed if ADI became subrogated to Wausau's claim against the bankruptcy estate.

■ ADI has not shown the "likelihood of success on the merits." It has failed to introduce any evidence tending to show that Wausau would receive 100% payment of its claim under the debtor's plan of reorgnization. *See In Re Larmar Estates, Inc., supra.* Thus ADI has utterly failed to prove that Wausau will not need to pursue its independent claim against ADI on the surety bond.

■ ADI has failed to show that the "balance of harm" weighs in its favor. Rather the evidence before the court strongly suggests that the balance of harm weighs in favor of Wausau. An examination of the record shows that Wausau has been deprived for nearly three years from exercising its contractually bargained for right to pursue an independent action under the surety bond. During this time Wausau and its taxpayers have potentially been deprived of the use of valuable financial resources. On the other hand ADI has been the gratuitous beneficiary of Dore's bankruptcy reorganization. It has for nearly three years avoided litigation of a type which it specifically contemplated as a possibility when it issued the construction bond to Wausau. Even if ADI were found liable on the construction bond all would not be lost since it would be subrogated to Wausau's claim against the debtor. Although ADI has made reference to the possibility of conflicting decisions in the bankruptcy court and the Marathon County court it has failed to adequately demonstrate that there is a real possibility that it could be held liable in the Marathon County case and thereafter be precluded from recovering any of its claim against the bankruptcy estate.

■ ADI has failed to meet its burden of proof with respect to the "public inter-est" factor. ADI has failed to demonstrate that the public interest in a successful reorganization of the debtor *continues* to outweigh the public interest in protecting the integrity of construction performance bonds. ADI has failed to show that the debtor's reorganization is significantly less likely to occur if the Marathon County suit is allowed to proceed. On the other hand, the harm which has occurred to the public interest in the commercial integrity of performance bonds is considerable in this case. Wausau has had to forego suit on ADI's bond for nearly three years. This has necessarily resulted in undermining the integrity of construction bonds in general.

To the extent that any judicial inefficiency and duplication of effort results from allowing the Marathon County suit to proceed it must be noted that the general public interest in judicial efficiency is necessarily subordinated in this instance to any duplication which results as a direct by-product of the congressionally created and sanctioned bankruptcy system. *See Lynch v. Johns Manville Sales Corp.,* 710 F.2d 1194, 1199 (6th Cir.1983).

■ Upon the foregoing which constitute my findings of fact and conclusions of law in this proceeding an order may be entered lifting the preliminary injunction by which the City of Wausau and the Redevelopment Authority of the City of Wausau are restrained from proceeding against American Druggists' Insurance Company in the Circuit Court for Marathon County, Wisconsin.