In re A. TARRICONE, INC., Debtor.

GATX TERMINALS CORPORATION, a corporation, Plaintiff,

v.

A. TARRICONE, INC., a corporation, Defendant.

Bankruptcy No. 86 B 20573.
No. 87 Adv. 6105.

United States Bankruptcy Court,
S.D. New York.

Sept. 4, 1987.

Irwin & Post, Roseland, N.J., for plaintiff.

Proskauer Rose Goetz & Mendelsohn, New York City, for defendant.

## DECISION ON MOTION FOR PARTIAL SUMMARY JUDGMENT

HOWARD SCHWARTZBERG, Bankruptcy Judge.

GATX, the plaintiff in this adversary action, moves for partial summary judgment in the amount of $56,095.68, plus interest from June 1, 1987. The $56,095.68 represents post-petition charges under a warehousing agreement with the debtor. The facts are not disputed.

### FACTS

1. Defendant A. Tarricone, Inc. ("ATI") is a New York corporation, with its principal place of business at 1337 Saw Mill River Road, Yonkers, New York 10710. On December 12, 1986, ATI filed with this court a voluntary petition under Chapter 11 of the Bankruptcy Code.

2. GATX is a Delaware corporation, which operates a public terminal facility for the storage and handling of clean petroleum and petro-chemical products and chemicals at Lafayette Street, in the Borough of Carteret, County of Middlesex in the State of New Jersey (hereinafter, sometimes "Carteret Terminal").

3. As of April 1, 1986, GATX and ATI entered into Contract No. 90–1039 for the storage of clean petroleum commodities in tanks 100–7–F, 100–8–F and 100–9–F at GATX's Carteret Terminal. For the charges specified, GATX agreed, as a warehouseman, to:

> handle Commodities into and out of the Terminal and to provide the facilities necessary to perform such handling. GATX agrees to furnish only in-bound, outbound and monthly stock reports as to the quantity handled and on hand on GATX's reporting forms and to prepare bills of lading for shipments. All receipts and deliveries of Commodities shall be arranged by Customer, and GATX shall be responsible only to receive or discharge, as the case may be, the Commodities at its dock lines or other Terminal lines from or to those vehicles or vessels provided for in the Schedule which GATX, in its opinion, is capable and equipped to handle.

Pursuant to this agreement GATX would receive from ATI certain gasoline blending components into blend tanks, and would circulate and mix the components according to instructions from ATI. The resulting blended commodities subsequently would be shipped out of the terminal by barge, vessel or pipeline.

4. Contract No. 90–1039 provided for an initial one year term from May 1, 1986 through April 30, 1987, and successive six-month renewals, provided that neither party issue a notice of termination to the other. (The agreement also allowed ATI to terminate after six months.)

5. On January 28, 1987, GATX sent a notice to ATI under Contract No. 90–1039, stating that this agreement would terminate upon the expiration of its initial one-year term on April 30, 1987.

6. On March 17, 1987, plaintiff filed as an adversary proceeding in this court its Verified Complaint Seeking Declaratory Judgment that Debtor Has No Property Interest in Warehousing Agreements. Plaintiff alleged in this Complaint that, on account of the termination notice described in Paragraph 10 and the termination notice issued for another warehousing agreement between the parties, and upon their April 30, 1987 effective date, the ATI estate in this Chapter 11 case had no property interest in the warehousing agreements. When plaintiff moved for summary judgment on its complaint, ATI consented to the form and entry of a judgment declaring that, effective April 30, 1987, Contract No. 90–1039 and the other warehousing agreement between GATX and ATI were terminated and that the ATI estate had no property interest in said contracts. This judgment was signed by the court and entered on April 17, 1987.

Paragraph 2 of this consent judgment states:

> (T)his order and summary judgment be and hereby are entered without prejudice to any claims which the parties may have

on account of acts or omissions, or liabilities incurred by, the other party during the term of those contracts . . .

7. In addition to the monthly charges payable under its other provisions, Paragraph 24 of Contract No. 90–1039 obliged ATI to pay $.22 per barrel for "throughput" (that is, the amount of commodity passed into the GATX tanks) in excess of 1,800,000 barrels, during each six month period of the agreement. In early May, 1987, plaintiff issued an invoice with itemization to ATI in the amount of $56,095.68, for charges for such excess throughput and labor. Pursuant to the terms of the warehousing agreement, plaintiff calculated the total throughput for the second six month period of the contract which terminated, with the warehousing agreement itself, on April 30, 1987. As the invoice reflected, throughput for this six month period totalled 2,053,506 barrels, or 253,506 barrels in excess of the 1,800,000 level. The first month in which the 1,800,000 barrel level was exceeded was April, 1987.

8. The amount invoiced and due for excess throughput is $55,771.32. With the $324.36 charged for additional labor pursuant to the warehousing agreement, the total amount of the invoice is $56,095.68. Pursuant to Paragraph 34 of the contract, said amount was due within five working days after presentation of the invoice.

9. ATI counters the GATX motion for partial summary judgment and states that it subleases to Bear Stearns the petroleum storage space it leased from GATX. ATI further alleges that during the contract period, all of the petroleum stored belonged to Bear Stearns and that pursuant to an agreement between ATI and Bear Stearns, the latter was obligated to pay ATI a monthly fee as well as for excess "throughput". In fact, Bear Stearns paid ATI regularly until the last invoice which ATI submitted to Bear Stearns. Bear Stearns withheld payment and charged that ATI had overcharged it. ATI contends that Bear Stearns owes ATI at least the amount of GATX's claim against ATI, and owes ATI over $100,000 under ATI's interpretation of its agreement with Bear Stearns.

In light of the foregoing, ATI requests that the GATX action be stayed pursuant to 11 U.S.C. § 105 pending ATI's ultimate recovery from Bear Stearns.

## DISCUSSION

There is no genuine issue as to any disputed material facts. Accordingly, GATX's motion for partial summary judgment is appropriate for determination by the court. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986); *Katz v. Goodyear Tire and Rubber Co.,* 737 F.2d 238, 244 (2d Cir.1984).

GATX claims the sum of $56,095.68 plus interest for post-petition charges due under a warehousing agreement with the debtor with respect to petroleum commodities in tanks leased by GATX. The amount owed is not disputed by the debtor. As provided in the contract, the May, 1987 invoice for excess throughput amounted to the sum of $55,771.32, together with $324.36 as due for additional labor as permitted under the contract, for a total of $56,095.68.

The fact that the debtor subleased the storage facilties to Bear Stearns under a separate agreement does not support the debtor's position that GATX should be stayed from collecting the undisputed amount owed by the debtor until the debtor is able to resolve its dispute with Bear Stearns and collects the amount that the debtor claims is owed to it by Bear Stearns. There is no privity of contract between GATX and Bear Stearns. *See Xerox Corp. v. Listmark Corporation Systems,* 142 N.J.Super. 232, 361 A.2d 81 (1976); *Wehrle v. Landsman,* 23 N.J.Super. 40, 92 A.2d 525 (1952); *Baum v. Tazwell,* 26 N.J. Misc. 292, 61 A.2d 12 (1948).

■ The amount claimed by GATX relates to a post-petition invoice. The automatic stay imposed under 11 U.S.C. § 362(a)(6) does not restrain actions to collect claims against the debtor that arose after the commencement of the bankruptcy case; the stay relates only to prepetition claims. *See Turner Broadcasting System, Inc. v. Sanyo Electric, Inc.,* 33 B.R. 996, 1000 (N.D.Ga.1983). Accordingly, the debt-

or invokes the equitable powers of this court.

 Pursuant to 11 U.S.C. § 105(a), the bankruptcy court has the power to issue orders necessary or appropriate to carry out the provisions of Title 11. The All Writs Act, 28 U.S.C. § 1651, also authorizes bankruptcy courts to issue stays. However, the mere fact that a debtor's assets might be diminished by an adverse decision in a litigation pending against a debtor does not alone justify the issuance of a discretionary stay. *See Equal Employment Opportunity Commission v. Rath Packing Company,* 787 F.2d 318, 325 (8th Cir.1986). Generally, the standard for obtaining relief under 11 U.S.C. § 105(a) is substantially the same as under Rule 65 of the Federal Rules of Civil Procedure, namely:

    1. Whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;

    2. Whether the plaintiff has shown irreparable injury;

    3. Whether the issuance of an injunction would cause substantial harm to others;

    4. Whether the public interest would be served by issuing an injunction.

*In re Monroe Well Service, Inc.,* 67 B.R. 746, 755–756 (Bankr.E.D.Pa.1986); *Dore and Associates Contracting, Inc. v. American Druggists' Insurance Company,* 54 B.R. 353, 357 (Bankr.W.D.Wisc.1985); *In re Baldwin-United Corp.,* 48 B.R. 901, 902 (Bankr.S.D.Ohio 1985).

In the instant case, the debtor has not shown a substantial likelihood or probability of success on the merits. Indeed, the debtor concedes the amount owed to GATX, but would prefer to defer payment until after it resolves its problems with Bear Stearns under the separate sublease. Moreover, the debtor has neither alleged nor shown that it will sustain irreparable injury if it is required to pay the amount claimed by GATX under the post-petition invoice. The balance of harm test, as stated in the third factor for issuing a stay, is inapplicable since third parties are not involved. The last factor, "public interest" is similarly not implicated, since there is no evidence that a stay is needed for a successful reorganization, which will ultimately involve the payment of claims and the continued retention of the debtor's employees. In sum, the debtor has failed to present any credible support for its request that a stay be issued pursuant to 11 U.S.C. § 105(a) restraining GATX from pursuing its post-petition claim against the debtor until the debtor is able to collect under its sublease with Bear Stearns.

### CONCLUSIONS OF LAW

    1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(B).

    2. GATX is entitled to a partial summary judgment in the amount of $56,095.68, plus interest from June 1, 1987.

    3. The debtor's request for a stay pursuant to 11 U.S.C. § 105(a) restraining GATX from pursuing its claim against the debtor until the debtor collects the amounts it claims under a sublease with Bear Stearns, is denied.

SETTLE ORDER on notice in accordance with the foregoing.