In re Paula **LICKMAN**, Debtor.

**Marie E. Henkel, Trustee, Plaintiff,**

v.

**Paula Lickman, et al., Defendants.**

Bankruptcy No. 98–02632–6C7.
Adversary No. 01–170.

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Aug. 19, 2002.

710

Lynnea Concannon, Sean D. Concannon, Orlando, Florida, for plaintiff.

Marie E. Henkel, Orlando, Florida, Chapter 7 Trustee.

Gerald J. D'Ambrosio, Boca Raton, Florida, for defendant.

*DECISION ON PLAINTIFF'S MOTION FOR SANCTIONS FOR VIOLATION OF PRELIMINARY INJUNCTION OR MODIFICATION OF PRELIMINARY INJUNCTION*

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

This adversary proceeding came on for final evidentiary hearing on August 13, 2002, of the Motion for Sanctions for Violation of Preliminary Injunction or for Modification of Preliminary Injunction (Document No. 95) filed by the plaintiff/trustee on July 11, 2002. The motion seeks relief as to the defendants, Paula Lickman and James F. Wiley, III. Mr. Wiley is also the attorney for Ms. Lickman. These defen-

dants filed three responses to the motion: a letter to the court filed on July 24, 2002 (Document No. 97)[1]; a response filed on August 8, 2002 (Document No. 99); and another letter to the court received on August 8 and filed on August 12, 2002 (Document No. 100).

Based upon the testimony and evidence received at the final evidentiary hearing and the other facts established as a matter of record in the court files and at prior hearings conducted by the court in this bankruptcy case and this adversary proceeding, the court finds the facts and determines the legal issues as follows:

## I.

On February 21, 2002, the court entered its Decision on Debtor's Application for Administrative Expense (Main Case Document No. 118) in this bankruptcy case. That decision is reported at 273 B.R. 691. For the convenience of the court and the sake of brevity and time, the court quotes here from Part II of that decision as the factual context in which the disputes pending before the court arose and occurred:

The court finds the following facts by a preponderance of the evidence:

A. *The Debtor's Bankruptcy Case.*

The debtor filed a petition under Chapter 7 of the Bankruptcy Code on March 27, 1998. The debtor was *pro se.* In her schedules, the debtor listed unsecured non-priority debt in the amount of $38,657 (Document No. 2). The trustee conducted a meeting of creditors, pursuant to Section 341 of the Bankruptcy Code, on April 21, 1998. At the conclusion of that meeting, the trustee determined that there were no assets in the bankruptcy estate that could be administered for the benefit of creditors (Document No. 10). The trustee duly filed a report of no distribution (Document No. 11). On July 7, 1998, the debtor received a discharge of her debts (Document No. 14), and the clerk closed the case soon thereafter (Document No. 16).

B. *Tibey Pfeiffer's Probate Estate.*

In the meantime, on May 4, 1998, the debtor's aunt, Tibey Pfeiffer, passed away. The debtor was a 15 percent residuary beneficiary under her will, as was her brother Stephen Lickman (the debtor and her brother are collectively referred to here as the "Lickmans"). The residuary of the probate estate consisted of shares of BP Amoco stock and shares in two illiquid limited partnerships (Debtor's Exhibit No. 15).

The debtor's cousin, Marcy Shain, was a 60 percent residuary beneficiary under the will and was also the executrix of the probate estate (Debtor's Exhibit No. 10). The Court of Common Pleas, Orphans Court Division, located in Philadelphia County, Pennsylvania, issued letters testamentary to Marcy Shain on July 13, 1998 (Debtor's Exhibit No. 10).

Conflict soon arose between the Lickmans and Marcy Shain with respect to the administration and distribution of the probate estate. The Lickmans took issue with Marcy Shain's actions both before Tibey Pfeiffer's death (while operating under a power of attorney) and as executrix of the probate estate. The Lickmans also asserted that the executrix was a non-resident of Pennsylvania and was therefore required to post a bond.

In December 1998, the Lickmans commenced litigation against the executrix in the Pennsylvania Orphan's Court pro-

---

1. The letter contained a request for relief and argument on the merits of the plaintiff's motion for sanctions. The clerk filed and docketed the letter as a motion pursuant to the directions of the court contained in the court' order of July 29, 2002 (Document No. 98).

bate case. The Lickmans filed an emergency petition for injunctive relief and a petition for citation and injunctive relief seeking to enjoin the executrix from making any further distributions from the probate estate (Debtor's Exhibit No. 10). At about the same time, the Lickmans also filed a petition for discovery (Debtor's Exhibit No. 10).

On December 7, 1998, the Pennsylvania Orphan's Court issued a preliminary decree that enjoined the executrix from making further distributions pending the filing of a final accounting (Debtor's Exhibit No. 11). On December 23, 1998, the Pennsylvania Orphan's Court entered a second decree by stipulation of the parties (Document No. 110, transcript of final evidentiary hearing held on August 10, 2001, at page 39, lines 6–12).

That decree dissolved the preliminary decree and enjoined the executrix from making distributions to any legatee pending the posting of a bond in the amount of $400,000 (Debtor's Exhibit No. 11). The second decree further provided that the executrix could continue to administer the probate estate and pay the expenses incurred in that administration. The second decree also imposed a deadline of April 30, 1999, by which the Lickmans were to file an appeal of the Orphan's Court Decree of the Register to Wills admitting to probate the estate of Tibey Pfeiffer. Finally, the second decree reserved the Lickmans' rights to appeal the inventory or file objections to any account filed by the executrix. The executrix posted a bond shortly thereafter (Document No. 110, transcript of final evidentiary hearing held on August 10, 2001, at page 64, lines 17–25).

The Lickmans did not file an appeal of the decree admitting the will to probate within the time set by the court. On April 29, 1999, the Pennsylvania Orphan's Court issued a decree that granted the Lickmans' petition for discovery (Debtor's Exhibit No. 11). To date, no demand has been made against the bond (Document No. 110, transcript of final evidentiary hearing held on August 10, 2001, at page 80, lines 11–14).

C. *The Debtor's Reopened Bankruptcy Case.*

Section 541(a)(5)(A) of the Bankruptcy Code provides that property of the estate includes any inheritance or bequest to which the debtor becomes entitled within 180 days of the filing of the petition. Notwithstanding this provision, the debtor did not disclose to the Chapter 7 trustee or the bankruptcy court her interest in the estate of Tibey Pfeiffer. The debtor instead informed her attorneys. At the hearing, the debtor testified that the "attorneys felt that it was not yet time to inform the trustee because [they and she] didn't think there was anything coming out of the probate estate; therefore, there would be nothing for the bankruptcy" (Document No. 110, transcript of final evidentiary hearing held on August 10, 2001, at page 32, lines 14–19).

On August 10, 1999, counsel for the executrix, David Segal, contacted the trustee and informed her of the debtor's inheritance. The trustee promptly filed a motion to reopen the debtor's bankruptcy case to administer the asset (Document No. 17). The court entered an order reopening the case on August 16, 1999 (Document No. 18).

On the same date, Gerald J. D'Ambrosio, an attorney now acting on behalf of the debtor, wrote a letter to the trustee urging the trustee to abandon the estate's interest in the probate estate. He stated his opinion that the debtor's re-

siduary share in the estate of Tibey Pfeiffer was essentially without much realizable value, especially when subtracted from the amounts already expended by the debtor in her litigation efforts in the Pennsylvania probate case (Debtor's Exhibit No. 16). Mr. D'Ambrosio offered to exchange the illiquid limited partnership interests for repayment of $16,000 that he said the debtor had expended in attorney's fees in connection with the Pennsylvania probate case. Although the letter was silent on the issue of the contentious and active probate litigation, the debtor testified that she informed the trustee "many times" of the executrix' alleged improprieties and court orders entered in the probate case (Document No. 110, transcript of final evidentiary hearing held on August 10, 2001, at page 38, lines 21–25, and at page 39, lines 1–5).

On September 9, 1999, the court approved the employment of Lynnea Concannon as attorney for the trustee (Document No. 22). The trustee's counsel then entered into preliminary negotiations with the executrix' counsel for the sale of the estate's interest in the probate estate (Debtor's Exhibit No. 4). The debtor, on her own, through her attorneys, Mr. D'Ambrosio and Mr. Armstrong, and through a friend, Robert Daniels or Robert Dizak, apparently made several phone calls to the trustee or trustee's counsel asserting her right to prosecute the claims against the executrix raised in the probate case in Pennsylvania independently of the bankruptcy court and the Chapter 7 trustee. On September 29, 1999, trustee's counsel wrote a letter to the debtor (Debtor's Exhibit No. 5) warning her that, "if [she] continue[d] to frustrate the efforts of the trustee to administer [the] bankruptcy case," the trustee would seek to revoke the debtor's discharge.

The trustee soon thereafter filed an adversary proceeding seeking to revoke the debtor's discharge pursuant to Section 727(d)(2) of the Bankruptcy Code (Adversary Proceeding No. 99–282). The complaint alleged the debtor's failure to disclose her interest in the Tibey Pfeiffer probate estate. After a trial, the bankruptcy court entered judgment in favor of the debtor (Adv.Proc.Doc. No. 33), finding that the debtor's failure to disclose her inheritance did not rise to the level of conscious fraud required to revoke her discharge pursuant to Section 727(d)(2) because the debtor had relied on the advice of counsel in not disclosing her inheritance. (Adv.Proc. Doc. No. 34).

The trustee also filed an adversary proceeding against the debtor seeking a declaratory judgment that the debtor's interest in the Tibey Pfeiffer probate estate, including all claims arising out of the executrix' actions in that estate, were property of the estate (Adversary Proceeding No. 99–227). The debtor vigorously opposed the trustee in that proceeding. The court ultimately determined that proceeding in the trustee's favor on summary judgment and held that the debtor's rights in the probate estate, including all tangible assets as well as any causes of action arising out of the probate estate, were property of the estate. (Adv.Proc.Doc. No. 29). The debtor took no appeal from this judgment.

The trustee then negotiated a sale of the estate's interest in the probate estate, including all causes of action against the executrix, to Marcy Shain individually for the sum of $23,500. In the notice of sale (Document No. 55, Debtor's Exhibit No. 15), the trustee stated that the sale price was "the approximate value of the BP Amoco

Stock." The trustee further represented that "the claims against Marcy Shain are valueless to the bankruptcy estate." (Document No. 55, Debtor's Exhibit No. 15). Finally, the trustee represented that she believed the sale to be in the best interests of the estate because:

> ... any higher sale price is unlikely. The potential claims against Marcy Shain Messa would require very extensive discovery and substantial litigation expenses in order to determine the value and merit of said claims. The probate estate would continue to expend the estate assets defending such causes of action with the likely result that the estate would be exhausted. In addition, Paula Lickman has caused the bankruptcy estate to incur substantial expense defending and responding to frivolous claims and accusations. The limited partnership interests do not have sufficient value to justify further expense and risk of delay in liquidation of this asset.

After a hearing, the court found the sale to be in the best interests of creditors and approved the sale (Document No. 71) over the debtor's vehement objection. The debtor appealed this order to the district court and to the court of appeals. Her appeals were dismissed. 273 B.R. 691, 693–97 (footnotes omitted).

## II.

As described, in heated litigation between the debtor and the trustee, this court determined that the debtor's interest in the Tibey Pfeiffer probate estate, including all claims arising out of the executrix' actions in that estate, were property of the bankruptcy estate. [PX 7, PX 8].[2] The debtor took no appeal from the court's judgment.

The court similarly determined, in protracted and contentious litigation between the debtor and the trustee, that the sale of the estate's interest in the Tibey Pfeiffer probate estate to Marcy Shain for the sum of $23,500 was in the best interests of creditors and the estate. The transcript of the hearing of the debtor's objections to the trustee's notice of that sale clearly reflects that the trustee voluntarily and consensually entered into the sale agreement with Marcy Shain with the full knowledge and understanding that the sale included causes of actions against Marcy Shain, individually and as executrix, for her alleged malfeasance before and during the probate case (Main Case Document No. 70). Following the hearing, the court overruled the debtor's objections that the sale violated public policy and was procured by fraud and collusion. The court then approved and authorized the trustee's sale of that estate asset.[3] The debtor took no appeal from the court's order.[4]

These determinations are final and binding upon the debtor. Despite these binding determinations, the debtor has never accepted the fact that she no longer is a beneficiary of the Tibey Pfeiffer probate estate. Through a series of court proceedings in this court, in the Pennsylvania probate court, and in the federal district court

---

**2.** "PX" refers to plaintiff/trustee's exhibits received in evidence at the August 13, 2002, final evidentiary hearing.

**3.** In opposing the sale, the debtor objected to the sale as violative of public policy and alluded to the executrix' self-dealing. The debtor has since expanded her theories to include violation of Pennsylvania law.

**4.** The court's February 21, 2002, decision, 273 B.R. at 696–97, erroneously recites that the debtor appealed this order to the district court and the court of appeals and that the appeals were dismissed.

in Philadelphia, the debtor has continued to assert her interest in the Tibey Pfeiffer probate estate and to attack the trustee, the trustee's counsel, and the bankruptcy estate. Throughout these attacks, the debtor has characterized the trustee's liquidation of the estate's interest in the Tibey Pfeiffer probate estate—that the estate acquired as a matter of law pursuant to Section 541(a)(5)(A) of the Bankruptcy Code upon the debtor's filing of her bankruptcy petition and Ms. Pfeiffer's death soon thereafter—as an illicit conspiracy between the trustee and Marcy Shain to deprive the debtor of her inheritance. No facts have been presented to this court supporting this unfortunate mischaracterization.

Ultimately, the debtor—acting through her counsel, Mr. Wiley—initiated three actions in Pennsylvania. First, the debtor filed a petition in the Pennsylvania probate court overseeing the Tibey Pfeiffer probate estate seeking to declare void and unenforceable the estate's sale of its interest in the probate estate—the sale this court approved in an order binding upon the debtor. [PX 2]. Second, the debtor filed Civil Action No. 01–CV–2949 in the federal district court in Philadelphia against the trustee and her counsel seeking money damages for civil theft, conspiracy, breach of fiduciary duty and abuse of process arising from the sale of the estate's interest in the Tibey Pfeiffer probate estate—the same sale this court approved in an order binding upon the debtor. Third, the debtor filed Civil Action No. 01–CV–4014 in the federal district court in Philadelphia against the trustee and her counsel seeking a declaratory judgment that the sale of the estate's interest in the Tibey Pfeiffer probate estate was void—

again the same sale this court approved in an order binding upon the debtor.

As a consequence of these actions, the trustee filed this adversary proceeding against the debtor, Mr. Wiley, her Pennsylvania attorney, Gerald J. D'Ambrosio, her Florida attorney, and Robert Dizak or Robert Daniels, a friend who provided legal assistance to her and to her attorneys. The trustee alleged, among other things, that the defendants' actions were violations of the automatic stay provided by 11 U.S.C. § 362, the provisions of 28 U.S.C. § 959 and the *Barton* doctrine[5], and specific orders of this court. The trustee sought damages, sanctions, and injunctive relief.

For reasons detailed in the orders, this court entered a temporary restraining order on September 6, 2001 (Document No. 17), and a preliminary injunction on September 13, 2001 (Document No. 26) [PX 1]. Copies of these orders follow this decision as Appendix A and Appendix B, respectively. In relevant part, the preliminary injunction provided that:

1. Preliminarily, pending the trial of this adversary proceeding on its merits, the defendants, Paula Lickman and James F. Wiley III, and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, are hereby enjoined and restrained from:

a. prosecuting in any way (1) the action or proceeding pending in the Pennsylvania Orphans' Court to void the bankruptcy sale approved by this court, (2) Civil Action No. 01–CV–2949 pending in the United States District Court for

---

**5.** *Barton v. Barbour,* 104 U.S. 126, 127, 26 L.Ed. 672 (1881). *See also Carter v. Rodgers,* 220 F.3d 1249 (11th Cir.2000).

the Eastern District of Pennsylvania, and (3) Civil Action No. 01–CV–4014 pending in the United States District Court for the Eastern District of Pennsylvania, including, without limitation, seeking temporary or preliminary relief from either of those courts; and

b. initiating any new action or proceeding in any court, except this court, against the plaintiff and her attorneys on account of their service and actions as trustee in this bankruptcy case and as counsel to the trustee.

In its Order on Final Pretrial Conference entered on November 14, 2001 (Document No. 73), the court further provided that:

On September 13, 2001, the court entered an agreed preliminary injunction (Document No. 26). That order provided that the preliminary injunction will continue "pending the trial of this adversary proceeding on its merits." For clarification, that phrase is intended by the court to mean pending the determination of the issues hereby scheduled for trial and the entry of judgment.

In November 2001, the court conducted a trial of the issues. The parties filed post-trial submissions, and the court has the proceeding under advisement.

### III.

In the pending motion, the trustee claims that the debtor and her attorney, Mr. Wiley, have recently violated the terms of the court's preliminary injunction. The debtor and Mr. Wiley claim that they have not done so. Here is what the evidence reveals happened:

During the latter part of June 2002, the debtor and her brother, Stephen Lickman[6], through Mr. Wiley, filed a Petition for Citation in the Court of Common Pleas of Philadelphia County, Orphan's Court Division, in the Tibey Pfeiffer probate case. [PX 3]. In the petition, the debtor and Mr. Wiley sought the following relief:

(1) To declare unenforceable, as a matter of Pennsylvania law and public policy a certain written agreement made by Respondent Executrix, Marcy Shain, without Petitioners knowledge or consent, wherein Respondent sought to disinherit Petitioners so as to eliminate them as objectants before this Court. . . .

[Id. at initial paragraph].

The agreement to which the debtor and Mr. Wiley referred is the sale to Marcy Shain of the bankruptcy estate's interest in the Tibey Pfeiffer probate estate as approved by this court. As grounds for this relief, the debtor and Mr. Wiley then repeated their allegations of an illicit conspiracy between the trustee and Marcy Shain to deprive the debtor of her inheritance. [PX 3, ¶¶ 13–21].

When the trustee learned of this new filing in the Philadelphia probate court, the trustee prepared her motion for sanctions and filed it on July 11, 2002 (Document No. 95). On July 15, 2002, the clerk noticed the motion for final evidentiary hearing on August 13, 2002 (Document No. 96).

On August 8, 2002, the Lickmans, through Mr. Wiley, filed a Petition for Special Injunction and For Permanent Injunction in the Court of Common Pleas of Philadelphia County, Orphan's Court Division, in the Tibey Pfeiffer probate case. [PX 4]. The Lickmans and Mr. Wiley also presented a proposed form of Show Cause Order to the probate court. [Id.]. In this

---

**6.** The court will sometimes refer to the debtor and her brother, Stephen Lickman, as "the Lickmans."

petition, the Lickmans and Mr. Wiley sought a broad preliminary and permanent injunction prohibiting the trustee from, among other things, pursuing her sanctions motion in this court that was scheduled for hearing on August 13. As grounds for this relief, the Lickmans and Mr. Wiley then repeated their allegations of an illicit conspiracy between the trustee and Marcy Shain to deprive the debtor of her inheritance. [*Id.* at ¶¶ 2–23, 27, 32]. They also attacked the validity of this court's September 13, 2001, preliminary injunction (Document No. 26) [PX 1] to which the debtor and Mr. Wiley had consented and from which they did not appeal. [PX 4 at ¶ 26].

On August 9, 2002, the Philadelphia probate court entered an order denying the petition for injunction. [PX 5]. The court wrote:

> [I]t appearing that no irreparable harm will result from the denial of the within petition as petitioners may pursue appropriate remedies before the Florida Bankruptcy Court and, further, that Paula Lickman has no standing in this Court, it is hereby ORDERED and DECREED that the Petition DENIED.

[*Id.*].

On August 9 or 12, 2002, the Lickmans, through Mr. Wiley, filed a notice of appeal from the order denying their petition seeking an injunction against the trustee. [PX 11]. At the same time, they filed in the appellate court, the Superior Court of Pennsylvania, Eastern Division, Appellant's Emergency Motion to Stay the Lower Court's Order and for a Temporary Restraining Order. [PX 6]. At the hearing on August 13 before this court, it was not known what action, if any, the appellate court had taken regarding this motion.

## IV.

■ It is clear that the debtor and Mr. Wiley violated the terms of this court's September 13 preliminary injunction when they filed their Petition for Citation in the Philadelphia probate court during the latter part of June 2002. The preliminary injunction specifically forbade them from "prosecuting in any way (1) the action or proceeding pending in the Pennsylvania Orphans' Court *to void the bankruptcy sale approved by this court*" and from *"initiating any new action or proceeding in any court, except this court, against the plaintiff* and her attorneys on account of their service and actions as trustee in this bankruptcy case and as counsel to the trustee." Yet this is precisely what the debtor and Mr. Wiley did. They filed a new proceeding in the Philadelphia probate court *"[t]o declare unenforceable, as a matter of Pennsylvania law and public policy"* the sale agreement approved by *this court.* Instead of pursuing the original petition they filed in the probate court that occasioned the issuance of this court's preliminary injunction, the debtor and Mr. Wiley simply filed a new petition seeking the same relief.

The debtor and Mr. Wiley defend their action by asserting that the new petition sought to have the sale agreement declared "unenforceable" as to the executrix but not "void." This is a distinction without a difference. Black's Law Dictionary at 1529 defines "unenforceable" as "valid but incapable of being enforced. Cf. *void; voidable.*" (7th ed.1999). It matters little to a party to a contract that her contract is valid if she cannot enforce it. It is the concept of enforceability that is central to the common law's notion of contract. Indeed, Black's Law Dictionary at 318 defines "contract" as "[a]n agreement between two or more parties creating obligations *that are en-*

*forceable* or otherwise recognizable at law <a binding contract>."

■ The debtor and Mr. Wiley also argue that they merely seek a determination as to the validity of the sale agreement under Pennsylvania law. The debtor and Mr. Wiley point out that the sale agreement approved by this court specifically recites that it is to be governed by Pennsylvania law. They contend that only the Pennsylvania probate court can rule upon the agreement's validity. Although their factual predicate is correct, their legal contention is meritless. This court has already determined that the agreement is valid. The debtor was a party to the litigation in which the court made that determination. The debtor is bound by that determination. Indeed, this court makes determinations every day of the week concerning contracts that require the interpretation of foreign law—as does every other court. There is nothing about the call to Pennsylvania law in the contract that ousts this court of jurisdiction to decide the question and places that jurisdiction in the Pennsylvania probate court.

The debtor and Mr. Wiley further defend their action by arguing that, during the September 12, 2001, telephone conference that led to the issuance of the September 13 preliminary injunction, this court stated that the injunction would not prohibit them from pursuing the probate estate's executrix for her alleged self-dealing. As the transcript of that telephone conference (Document No. 49) plainly reveals, the court intended the injunction to prohibit the debtor and Mr. Wiley from seeking to void the sale approved by this court. It did not intend to prohibit them from seeking a recovery against the executrix so long as the legal theory that formed the basis of that recovery did not require a determination as to the validity or enforceability of the sale. Yet the debtor and Mr.

Wiley have in fact sought a recovery against the executrix by attempting to void the sale—the very thing prohibited by the injunction. [Document No. 49 at 10–15].

To make matters worse, the ground the debtor and Mr. Wiley urge to void the sale—or, using their words, to declare it unenforceable—is the trustee's alleged illicit conspiracy to deprive the debtor of her inheritance. Not only are they seeking to void the sale, therefore, they are also attacking the trustee in a new proceeding in another court on account of her service as trustee in this bankruptcy case—another action specifically prohibited in this court's preliminary injunction.

The debtor and Mr. Wiley again violated the terms of this court's preliminary injunction when they filed the August 8, 2002, Petition for Special Injunction and For Permanent Injunction in the Philadelphia probate court. They sought to enjoin the trustee from, among other things, prosecuting her sanctions motion at this court's August 13 hearing. That action plainly violated the terms of the injunction that prohibited "initiating any new action or proceeding in any court, except this court, against the plaintiff ... on account of [her] service and actions as trustee in this bankruptcy case...." Taking the appeal from the probate court's August 9 order denying relief violated this court's injunction for the same reason, as did seeking emergency relief from the Pennsylvania appellate court on August 9 or 12.

In addition to violating the square terms of this court's preliminary injunction, the actions of the debtor and Mr. Wiley have also interfered with the bankruptcy estate and property of the bankruptcy estate. Those actions threaten and jeopardize the sale of the estate's interest in the Tibey Pfeiffer probate estate without cause or justification. Even though the debtor is bound by principles of res judicata and

collateral estoppel to this court's determinations as to property of the estate and the validity of the sale, the trustee is nevertheless compelled to defend these determinations in response to the debtor's and Mr. Wiley's attacks. If the sale agreement is unenforceable as to Marcy Shain, it is equally unenforceable as to the trustee. If a determination were made that the sale agreement is unenforceable, that determination would establish a claim for the return of the consideration paid to the bankruptcy estate. *Olson v. North American Industrial Supply, Inc.*, 441 Pa.Super. 598, 658 A.2d 358, 363 (1995) ["Once the court declared the contract unenforceable, the parties were required to 'rescind' or return to the status quo."]; *Gull Laboratories, Inc. v. Diagnostic Technology, Inc.*, 695 F.Supp. 1151, 1154 (D.Utah 1988).[7] The executrix would then have a fiduciary obligation to pursue that claim for the benefit of the beneficiaries.

The trustee is especially required to defend the debtor's and Mr. Wiley's efforts because of the untoward allegations against the trustee that they use in making their attacks. Even if the trustee herself were not under attack, however, she would be required to defend these attacks to protect and preserve property of the estate. Were the attacks to be successful— as fanciful as that may seem given the binding effect on the debtor of this court's rulings—the estate would be at risk of having to return the consideration received upon the sale of the estate's interest in the probate estate.

The estate is also harmed by these attacks because the estate is required to respond with a defense. Responding with a defense means spending money. The bankruptcy estate is now administratively insolvent, in large part as a consequence of all of the frivolous actions—such as the actions at issue here—to which the debtor has caused the estate to respond. Because the estate assets are fixed in amount, the estate's deficit increases incrementally as additional administrative expenses are incurred by the trustee. Tragically, had the debtor cooperated with the trustee rather than campaign against the estate and the trustee, the estate would have been solvent and the trustee could have made a significant distribution to creditors.

The evidence at the August 13 hearing was that the estate has incurred attorney's fees of $5,670 for prosecuting the trustee's sanctions motion.[8] [PX 15]. The court credits the testimony of Sean Concannon as to these fees and finds that $5,670 represents a reasonable attorney's fee for these services as measured by the factors set forth in *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874 (11th Cir.1990), that are to be considered in determining the reasonableness of attorney's fees. The court further finds that these amounts were reasonably and necessarily incurred in response to the actions of the debtor and her attorney, Mr. Wiley.

The violations of the court's preliminary injunction by the debtor and her attorney, Mr. Wiley, were willful and intentional.

7. The debtor's efforts to have the sale agreement declared void or unenforceable are apparently based upon the debtor's mistaken belief that, once the sale is voided, she will again be a beneficiary of the probate estate of Tibey Pfeiffer. To the contrary, were the sale to be somehow avoided, it would be the bankruptcy estate's interest that would be restored in the probate estate.

8. These fees included estimated fees in the amount of $2,250 for attendance at the August 13, 2002, hearing based upon an estimate of five hours. The hearing lasted for three hours. Allowing for travel from Orlando to Tampa and back, the plaintiff's estimate was accurate and consistent with the time that was actually spent.

The violations were committed with knowledge of the preliminary injunction and that the acts described were in contravention of its terms. The court specifically finds incredible Mr. Wiley's testimony that he believed that the acts that he took on the debtor's behalf in the Pennsylvania courts were not within the ambit of conduct prohibited by the preliminary injunction.

In addition, the debtor and her attorney, Mr. Wiley, acted in bad faith in violating the preliminary injunction. They sought to oust this court of jurisdiction of this dispute, while at the same time collaterally attacking final orders that have long since been binding on the debtor. They took the prohibited actions for an improper purpose and with knowledge and conscious disregard of this court's order.

The debtor was an active and direct participant in these violations of the preliminary injunction. The debtor, who has some legal experience, has previously testified as to her efforts to achieve her desired objectives in the probate court and in this bankruptcy case (Main Case Document No. 110). To this end, she has taken an affirmative and proactive role in all proceedings, even when she does not appear personally in court. Her actions at issue here are consistent with that established pattern and course of dealing. *Beck v. Bassett (In re Southeast Banking Corp.)*, 204 F.3d 1322, 1331–1332 (11th Cir.2000) [court can consider the entire history of a case in determining whether conduct is willful]. The debtor verified through Mr. Wiley the truth and accuracy of the facts stated in the June 2002 probate court petition that she filed in violation of the preliminary injunction. [PX 3, last page]. In addition, the debtor read and adopted the response to the trustee's sanctions motion (Document No. 99 at ¶ 14). In all of her papers, she knowingly ignores and rejects the binding determinations previously made by this court.

It bears saying once again, as the court did during the September 12, 2001, telephone conference (Document No. 49) that nothing in this court's preliminary injunction precludes the debtor and Mr. Wiley from seeking to remove the probate executrix or to recover money from her for her alleged misconduct and alleged self-dealing as executrix on some theory other than the invalidity or unenforceability of the sale agreement or the illicit conduct of the bankruptcy trustee.[9] If, for hypothetical example, the executrix made improper distributions from the probate estate to herself or for her benefit, this court's preliminary injunction says nothing about preventing the debtor and Mr. Wiley from pursuing her. What the preliminary injunction does is prohibit them from seeking to void or declare unenforceable the sale of the bankruptcy estate's interest in the probate estate to Marcy Shain that this court has approved over the objection of the debtor and that therefore firmly binds the debtor. The preliminary injunction also precludes the debtor's and Mr. Wiley's attempts to drag the trustee into other courts.

It also bears saying that this court has entered no order that affects the debtor's brother, Stephen Lickman. This court's preliminary injunction does not affect Mr. Lickman or even Mr. Wiley as his attorney. Whatever Mr. Lickman's interest is in the probate estate of Tibey Pfeiffer, it is—unaffected and unfettered by this court. If Mr. Lickman's interest includes viable causes of action against the execu-

---

**9.** This court makes no determination as to the debtor's standing, if any, to make any claims in the probate estate of Tibey Pfeiffer.

trix for her alleged malfeasance before and during the administration of the probate estate, Stephen Lickman is at liberty to pursue those causes of action.

## V.

The court has jurisdiction of the subject matter and the parties pursuant to the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.,* 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and the general order of reference entered by the district court. This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

■ The court has the power to sanction for willful and intentional violations of its orders when the violations are made in bad faith. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Glatter v. Mroz (In re Mroz),* 65 F.3d 1567, 1575 (11th Cir.1995); *Lawrence v. Goldberg (In re Lawrence),* 279 F.3d 1294 (11th Cir.2002); *In re Graffy,* 233 B.R. 894, 898 (Bankr.M.D.Fla.1999). For the reasons stated above, the debtor's and Mr. Wiley's violations of the preliminary injunction were willful, intentional, and made in bad faith.

■ In these circumstances, the estate has been harmed at least to the extent of the $5,670 in attorney's fees incurred by the trustee's attorneys in prosecuting the sanctions motion.[10] The court will therefore sanction the debtor and Mr. Wiley, jointly and severally, in this amount to be paid within 30 days to the estate.

In addition, the estate is being harmed by the continued pendency of the pleadings and papers the debtor and Mr. Wiley have filed in the Philadelphia probate court and in the Pennsylvania appellate court that the court has found to have been filed in violation of this court's preliminary injunction. The court will therefore order the debtor and her attorney, Mr. Wiley, to withdraw and voluntarily dismiss those pleadings and papers—without equivocation or reservation—within ten days, failing which the court will impose a coercive sanction against the debtor and Mr. Wiley in the amount of $100 each per day until the papers and pleadings have all been withdrawn and voluntarily dismissed.

Pursuant to the provisions of F.R.B.P. 9021 and 9001(7), the court will enter a separate final order consistent with this decision.

## APPENDIX A

### TEMPORARY RESTRAINING ORDER

This adversary proceeding came on for consideration of the plaintiff's application for temporary restraining order without notice filed on September 5, 2001 (Document No. 14). The plaintiff's counsel presented the application with a supporting affidavit (Document No. 16) and legal memorandum (Document No. 15) to the undersigned in chambers at 9:00 o'clock a.m. on September 6, 2001.

This court presently has scheduled a hearing on September 14, 2001, of the plaintiff's motion for preliminary injunction. The hearing was originally set for hearing on August 31, 2001, but continued

10. The court received testimony and evidence at the August 13 hearing as to grievance complaints the debtor has filed with The Florida Bar against the trustee's counsel and attorney time spent in responding to them. [PX 13–15]. The preliminary injunction does not prohibit the debtor from filing such complaints, and the court is aware of no authority that at this time would permit the court to expand the injunction to prohibit the debtor from filing such complaints. The complaints received in evidence appear frivolous, and the court has every confidence that The Florida Bar will recognize them as such.

to September 14 upon the request of one of the defendants.

According to the application and supporting affidavit, the defendant, James F. Wiley III, counsel for the defendant, Paula Lickman, has stated to counsel for the plaintiff that he will seek today the entry of a temporary restraining order preventing the plaintiff from pursuing the motion for preliminary injunction scheduled for hearing on September 14 and that counsel subsequently obtained a copy of such a motion.

The action of the defendants, Wiley and Lickman, attacks the core of this court's jurisdiction contrary to the principles stated in the controlling authority, *Carter v. Rodgers*, 220 F.3d 1249 (11th Cir.2000). Unless this court acts to restrain such action, irreparable harm will occur to the plaintiff and to the bankruptcy policy of the United States. The defendants took this action notwithstanding the hearing scheduled before this court on September 14 and in derogation of this court's jurisdiction. In these circumstances, there is no time to give notice of the application to the defendants so they can be heard on the application before the harm will likely attach. Further, it appears that the plaintiff is likely to prevail in her contention that the actions of the defendants in attacking the orders of this court in the Court of Common Pleas of Philadelphia, Orphans' Court Division, and in the United States District Court for the Eastern District of Pennsylvania, and in seeking the relief sought there, absent this court's prior approval, are contrary to settled law as contained in the *Carter* case.

For these reasons, the court concludes that the plaintiff has demonstrated entitlement to the entry of this temporary restraining order. Accordingly, the court hereby grants the plaintiff's application, and the court hereby

ORDERS and DECREES that:

1. Temporarily, pending the hearing of the plaintiff's motion for preliminary injunction previously scheduled for September 14, 2001, at 9:30 o'clock a.m., the defendants, Paula Lickman and James F. Wiley III, and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, are hereby enjoined and restrained from:

a. prosecuting in any way (1) the action or proceeding pending in the Pennsylvania Orphans' Court to void the bankruptcy sale approved by this court, (2) Civil Action No. 01–CV–2949 pending in the United States District Court for the Eastern District of Pennsylvania, and (3) Civil Action No. 01–CV–4014 pending in the United States District Court for the Eastern District of Pennsylvania, including, without limitation, seeking temporary or preliminary relief from either of those courts; and

b. initiating any new action or proceeding in any court, except this court, against the plaintiff and her attorneys on account of their service and actions as trustee in this bankruptcy case and as counsel to the trustee.

2. Pursuant to the provisions of F.R.B.P. 7065, the court issues this temporary restraining order without compliance with F.R.Civ.P. 65(c).

DONE and ORDERED at Tampa, Florida, this 6th day of September, 2001, at 9:50 o'clock a.m.

## APPENDIX B

### AGREED PRELIMINARY INJUNCTION

This adversary proceeding came on for consideration on September 12, 2001, at an informal telephone conference. Attending were Lynnea Concannon and Sean D. Concannon, counsel for the plaintiff; and Gerald J. D'Ambrosio and James F. Wiley III, counsel for the defendant, Paula Lickman, and defendants themselves.

On September 6, 2001, the court entered a temporary restraining order (Document No. 17). In that order, the court also scheduled for hearing on September 14, 2001, of the plaintiff's motion for preliminary injunction. The court convened the informal telephone conference after Mr. Wiley filed on September 11, 2001, a motion for continuance of that hearing (Document No. 21). Although the court was not aware of it at the time of the informal telephone conference, the court also notes that defendant Lickman also filed on September 12, 2001, a motion for continuance of that hearing (Document No. 23).

During the telephone conference, Mr. Wiley and counsel for defendant Lickman agreed to continue the terms of the court's temporary restraining order as a preliminary injunction pending the trial of this adversary proceeding on its merits. In addition, Mrs. Concannon, Mr. Wiley, and Mr. D'Ambrosio agreed that the court should cancel the September 14 hearing and schedule the adversary proceeding for trial on November 19 and 20. The parties further agreed that the court consolidate for discovery, pretrial, and trial the adversary proceeding with the debtor's motion to remove the trustee filed on September 10, 2001 (Main Case Document No. 106).

Based upon the agreements of the parties made during the telephone conference, it is, therefore,

ORDERED and DECREED that:

1. Preliminarily, pending the trial of this adversary proceeding on its merits, the defendants, Paula Lickman and James F. Wiley III, and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, are hereby enjoined and restrained from:

a. prosecuting in any way (1) the action or proceeding pending in the Pennsylvania Orphans' Court to void the bankruptcy sale approved by this court, (2) Civil Action No. 01–CV–2949 pending in the United States District Court for the Eastern District of Pennsylvania, and (3) Civil Action No. 01–CV–4014 pending in the United States District Court for the Eastern District of Pennsylvania, including, without limitation, seeking temporary or preliminary relief from either of those courts; and

b. initiating any new action or proceeding in any court, except this court, against the plaintiff and her attorneys on account of their service and actions as trustee in this bankruptcy case and as counsel to the trustee.

2. Pursuant to the provisions of F.R.B.P. 7065, the court issues this temporary restraining order without compliance with F.R.Civ.P. 65(c).

3. The court hereby cancels the hearing previously scheduled for September 14, 2001, on the plaintiff's motion for preliminary injunction. The motions for continuance (Documents Nos. 21 and 23) are therefore deemed moot.

4. The court hereby consolidates for purposes of discovery, pretrial proceedings, and trial this adversary proceeding and the contested matter initiated by the debtor's motion to remove the trustee filed

724

on September 10, 2001 (Main Case Document No. 106).

5. By separate order, the court will schedule the trial of the consolidated adversary proceeding and contested matter for November 19 and 20, 2001. Henceforth, all pleadings and papers in the contested matter shall be captioned and filed in this adversary proceeding file.

6. The court also notes that Mr. D'Ambrosio has filed an answer to the complaint (Document No. 24). Although the answer contains a demand for jury trial, Mr. D'Ambrosio withdrew that demand during the telephone conference.

DONE and ORDERED at Tampa, Florida, this 13th day of September, 2001, at 2:00 o'clock p.m.