**In re Paula LICKMAN, Debtor.**

**Marie E. Henkel, Trustee, Plaintiff,**

**v.**

**Paula Lickman et al., Defendants.**

Bankruptcy No. 98–02632–6C7.
Adversary No. 01–170.

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Dec. 12, 2002.

Gerald J. D'Ambrosio, Boca Raton, FL, for debtor.

Marie E. Henkel, Orlando, FL, trustee.

Lynnea Concannon, Orlando, FL, for trustee.

## FINAL ORDER ON DEBTOR/DEFENDANT'S MOTION TO DISSOLVE INJUNCTION

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

This adversary proceeding came on for consideration of the debtor/defendant's motion to dissolve injunction filed on October 30, 2002 (Document No. 124). In her

motion, the debtor seeks to dissolve the preliminary injunction entered on September 13, 2001 (Document No. 26), and reported at *Henkel v. Lickman (In re Lickman)*, 282 B.R. 709, 723–24 (Bankr. M.D.Fla.2002). On October 31, 2002, the court entered an order that established a briefing schedule and advised the parties that it would consider the debtor's motion on the papers, if possible (Document No. 126). The parties timely filed briefs in support of their positions (Documents Nos. 127 and 129).

After considering the facts established as a matter of record in the court file and the written arguments of the parties, including the cited authorities, the court determines that the preliminary injunction should not be dissolved.

## I.

### *Procedural and Factual Background*

The Chapter 7 trustee initiated this adversary proceeding as a consequence of the debtor's and other defendants' efforts to attack collaterally the trustee's bankruptcy court-approved sale of property of the estate: a beneficial interest in a probate estate and putative causes of actions against the executrix of the probate estate.[1] Among other things, the debtor had initiated three actions in Pennsylvania that attacked the validity and propriety of the trustee's sale of this estate asset. First, the debtor filed a petition in the Pennsylvania court that oversaw the Tibey Pfeiffer probate estate seeking to declare the sale agreement void and unenforceable. Second, the debtor filed against the trustee

and her counsel Civil Action No. 01–CV–2949 in the federal district court in Philadelphia seeking money damages for civil theft, conspiracy, breach of fiduciary duty, and abuse of process arising from the trustee's sale of the probate estate asset. Third, the debtor filed against the trustee and her counsel Civil Action No. 01–CV–4014 in the federal district court in Philadelphia seeking a declaratory judgment that the sale of the probate estate asset was void. The defendant, James F. Wiley, III, a Philadelphia attorney, represented the debtor in the court proceedings in Pennsylvania.

In her complaint in this adversary proceeding, the trustee alleged, among other things, that the debtor's actions violated the automatic stay provided by 11 U.S.C. § 362, the provisions of 28 U.S.C. § 959 and the *Barton* doctrine[2], and specific orders of this court. The trustee sought a contempt citation, damages, sanctions, and injunctive relief.

Shortly after commencing this adversary proceeding, the trustee filed a motion for temporary restraining order without notice supported by the trustee's affidavit (Documents Nos. 4 and 5). The motion alleged that the debtor had filed a petition in the Pennsylvania probate court seeking a distribution from the probate estate. The court denied the motion for temporary restraining order without notice because it failed to satisfy the requirements of F.R.Civ.P. 65(b), but the court scheduled a hearing on the trustee's request for pre-

---

**1.** The court's decision, *Lickman*, 282 B.R. 709, contains a more comprehensive and detailed history of the events leading up to the filing of this adversary proceeding. The court assumes familiarity with that decision.

Other reported decisions in this case also detail its parameters: *In re Lickman*, 273 B.R.

691 (Bankr.M.D.Fla.2002), and *Henkel v. Lickman (In re Lickman)*, 284 B.R. 299 (Bankr.M.D.Fla.2002).

**2.** *Barton v. Barbour*, 104 U.S. 126, 127, 26 L.Ed. 672 (1881). *See also Carter v. Rodgers*, 220 F.3d 1249 (11th Cir.2000).

liminary injunction with notice for August 31, 2001 (Document No. 6).[3]

On August 27, 2001, the debtor filed a motion to continue the hearing of the preliminary injunction on account of the unavailability of her counsel (Document No. 9). The plaintiff consented to the debtor's request for continuance (Document No. 10). Accordingly, the court entered an order continuing the August 31 hearing to September 14, 2001 (Document No. 11).

Late on September 5, 2001, the plaintiff renewed her request for a temporary restraining order without notice and supported her motion with a new affidavit and a memorandum of law (Documents Nos. 14, 15, and 16). In the motion, the trustee alleged that Mr. Wiley had communicated to the trustee's counsel his intention to seek the next day from the district court in Philadelphia a temporary restraining order against the trustee enjoining her from proceeding with this adversary proceeding, including the hearing scheduled for September 14 on the trustee's motion for preliminary injunction. The affidavit provided evidentiary support for this allegation.

The trustee presented copies of these papers to the court in chambers on the morning of September 6. On the basis of the motion, affidavit, and memorandum of law, the court concluded that the trustee had established the factual and legal predicate necessary to obtain the extraordinary relief requested under F.R.Civ.P. 65(b). The court wrote that:

> The [threatened filing of a request for temporary restraining order in the Philadelphia federal district court by] the defendants, Wiley and Lickman, attacks the core of this court's jurisdiction contrary to the principles stated in the controlling authority, *Carter v. Rodgers,* 220 F.3d 1249 (11th Cir.2000). Unless this court acts to restrain such action, irreparable harm will occur to the plaintiff and to the bankruptcy policy of the United States. The defendants took this action notwithstanding the hearing scheduled before this court on September 14 and in derogation of this court's jurisdiction. In these circumstances, there is no time to give notice of the application to the defendants so they can be heard on the application before the harm will likely attach. Further, it appears that the plaintiff is likely to prevail in her contention that the actions of the defendants in attacking orders of this court in the Court of Common Pleas of Philadelphia, Orphans' Court Division, and in the Eastern District of Pennsylvania, and in seeking the relief sought there, absent this court's prior approval, are contrary to settled law as contained in the *Carter* case.

(Document No. 17, reported at *Lickman,* 282 B.R. at 721–22, App. A).

Accordingly, the court entered a temporary restraining order without notice to the defendants on the trustee's second application seeking that relief. *Id.* The temporary restraining order enjoined the debtor and her Pennsylvania attorney, Mr. Wiley, from prosecuting the actions described above, including seeking temporary or preliminary relief from the courts located in Pennsylvania. The temporary restraining order also prohibited the debtor and Mr. Wiley from filing new actions to attack the trustee or her counsel on account of their services on behalf of the bankruptcy estate.

---

**3.** The court also directed the plaintiff to serve on all defendants a copy of the motion for temporary restraining order and the court's order denying it together with a notice of hearing. On August 24, 2001, the plaintiff filed a certificate of service reflecting service on all defendants as of that date (Documents Nos. 7 and 8).

The court entered the temporary restraining order pending the hearing of the trustee's request for preliminary injunction scheduled for September 14, 2001— some eight days later. On September 10, the plaintiff filed a certificate of service reflecting service of the motion and the temporary restraining order on all defendants (Document No. 19). The certificate of service reflected that Mr. Wiley received by facsimile on September 6, 2001, actual notice of the temporary restraining order.

Shortly after receiving notice of the temporary restraining order, Mr. Wiley proceeded with his plans to seek a temporary restraining order from the federal district court in Philadelphia (Document No. 84, at 430–432). Mr. Wiley informed the district court in Philadelphia of this court's temporary restraining order, and on that basis the district court took no action on his request (Document No. 84, at 448–452).

On September 11, 2001, Mr. Wiley filed a motion for continuance of the September 14 hearing stating that he had a conflict on that date. In the motion, Mr. Wiley stated that all actions that involved the trustee and her counsel had been dismissed and there were no pending matters before the Pennsylvania probate court that had "any potential of impacting on the bankruptcy estate." In the motion, Mr. Wiley also certified that he would not "proceed with any action which could impact on the trustee, any of her counsel, or the bankruptcy estate." (Document No. 21). On the same day, Mr. Wiley also filed his opposition to the trustee's request for preliminary injunction (Document No. 22).

On September 12, 2001, the debtor filed on a *pro se* basis a motion for continuance of the September 14 hearing because she needed additional time to present evidence and testimony in opposition to the trust-

ee's request for preliminary injunction (Document No. 23).

That same day, the court conducted a telephone conference of the motions to continue the September 14 hearing. Debtor's bankruptcy counsel and Mr. Wiley participated in that conference and represented the debtor's and their individual interests. At that conference, both attorneys agreed, on behalf of the debtor and themselves, to the court's continuance of the terms of the temporary restraining order as a preliminary injunction pending the court's final determination on the merits of this adversary proceeding (Document No. 49, at 14, lines 7–15, at 17, lines 3–9, and at 19, lines 2–5). The parties also agreed to trial dates in November (Document No. 49, at 17, lines 10–25, at 18, and at 19, lines 1–13). Accordingly, the court entered an agreed preliminary injunction on September 13, 2001, that continued the same terms as the temporary restraining order pending final determination of the adversary proceeding (Document No. 26, reported at *Lickman,* 282 B.R. at 723–24, App. B).

The debtor did not take an appeal of the preliminary injunction although it was clearly an order that could be appealed. 28 U.S.C. § 158(a)(3); F.R.B.P. 8001(b); *cf. Cable Holdings of Battlefield, Inc. v. Cooke,* 764 F.2d 1466, 1471 (11th Cir.1985)["orders that directly grant, or refuse to grant, a preliminary injunction" are subject to appeal]. Almost a month later—on October 11, 2001—the debtor filed a motion seeking relief from the preliminary injunction on the basis that neither of her attorneys had consented to its entry (Document No. 43). The court conducted a hearing of that motion on October 16, 2001. Neither the debtor nor her attorneys attended that hearing. The court subsequently entered an order denying the debtor's motion for relief from the prelimi-

nary injunction because the transcript of the September 12 telephone conference plainly revealed the defendants' consent to the preliminary injunction (Document No. 54).

In November 2001, the court conducted a three day trial of the merits of the adversary proceeding. The parties filed post-trial submissions, and the court has the proceeding under advisement.

On July 11, 2002, the trustee filed a motion for sanctions against the debtor and Mr. Wiley for actions taken in violation of the court's preliminary injunction (Document No. 95). On August 19, following an evidentiary hearing at which Mr. Wiley fully participated on the debtor's and his own behalf, the court found that the debtor and Mr. Wiley had violated the preliminary injunction by filing in the Pennsylvania probate court a petition to declare the trustee's sale agreement unenforceable, a petition for special and permanent injunction against the trustee, and a notice of appeal of the probate court's order denying the petition for special and permanent injunction. (Document No. 102, reported at *Lickman,* 282 B.R. at 716–21). The court also found that the debtor and Mr. Wiley had violated the preliminary injunction by filing in the Pennsylvania appellate court a motion for stay pending appeal and for temporary restraining order against the trustee. The court entered an order assessing sanctions against the debtor and Mr. Wiley in the amount of $5,670, representing the trustee's attorney's fees incurred in defending against the debtor's actions and in prosecuting her motion for sanctions. The court's order also directed the debtor and Mr. Wiley to withdraw all papers that had been filed in violation of its preliminary injunction and assessed a coercive sanction in the amount of $100 each per day in the event the debtor and Mr. Wiley did not

comply with the court's order. The debtor and Mr. Wiley have both taken appeals of the final order entered on the court's decision (Documents Nos. 103, 105, 106, and 112).

On October 23, 2002, the trustee filed a verified motion for order to show cause why the debtor and Mr. Wiley should not be held in contempt for their failure to comply with the court's August 19, 2002, sanctions order and their continued violation of the preliminary injunction (Document No. 123). In that motion, the plaintiff asserted that the debtor and Mr. Wiley had taken no affirmative action to comply with the court's sanctions order directing them to withdraw papers filed in the Pennsylvania courts. The plaintiff also asserted that the debtor had filed a further appeal of a probate court order dismissing her petition to declare the trustee's sale of the probate estate asset unenforceable. The court denied that motion without prejudice because it improperly sought to shift the burden of proof on these issues to the defendants (Document No. 125).

On November 27, 2002, the plaintiff then filed a motion for civil contempt on the same grounds asserted in her earlier motion for order to show cause (Document No. 128). That motion is pending.

In the meantime, through the instant motion, the debtor seeks to dissolve the preliminary injunction on the basis that it was improperly entered and is no longer necessary to avoid irreparable harm.

*II.*

*Discussion*

■ "The right of continuance of a preliminary injunction is far from absolute. The dissolution of a preliminary injunction is a matter within the sound discretion of the court that issues the injunction." *Collum v. Edwards,* 578 F.2d 110, 113 (5th

Cir.1978). *See also Dore & Associates Contracting, Inc. v. American Druggists' Insurance Co.*, 54 B.R. 353, 360 (Bankr. W.D.Wis.1985)["The court has inherent power to modify preliminary injunctions if warranted by the facts and circumstances of the case."].

The party opposing relief from the preliminary injunction has the burden of demonstrating the "propriety of leaving the preliminary injunction in effect." *Id.* at 361. Accordingly, the plaintiff must establish the necessity for the continuation of the preliminary injunction. In other words, the plaintiff must show that the facts and circumstances of the case as it *now* exists continue to establish the elements necessary to issue a preliminary injunction.

In their briefs, the parties devoted a considerable portion of their legal arguments to the propriety and validity of the issuance of the preliminary injunction itself. That issue is currently on appeal in connection with the debtor's and Mr. Wiley's appeals of the court's August 19, 2002, sanctions order. The court will therefore defer to the district court consideration of those issues. *Shewchun v. United States*, 797 F.2d 941, 942 (11th Cir.1986)["the filing of a timely and sufficient notice of appeal acts to divest the trial court of jurisdiction over the matters at issue in the appeal"]; *In re Bradshaw*, 284 B.R. 520, 523 (Bankr.D.Mass.2002) ["taking of an appeal transfers jurisdiction from the Bankruptcy Court to the Appellate Court with regard to matters involved in the appeal and divest the Bankruptcy Court with jurisdiction" over those matters]. In the meantime, "[u]ntil the [bankruptcy court's] decision [to issue the preliminary injunction] is reversed for error by orderly review, either by itself or by a higher court, ... [the preliminary injunction is] to be respected." *Celotex Corp. v.*

*Edwards*, 514 U.S. 300, 313, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995).

Although the district court can deal with the debtor's arguments as to the validity and propriety of the issuance of the preliminary injunction in the first place if it chooses to do so in the appeal from the sanctions order, for present purposes this court finds the debtor's arguments, with respect to the propriety and validity of the issuance of the preliminary injunction, to be without merit. The court, therefore, will concentrate on whether the facts and circumstances of the case as they now exist establish the elements that would justify the continuation of the preliminary injunction.

The elements necessary to the issuance or continuation of a preliminary injunction are well-known. They are: "(1) substantial likelihood of [the plaintiff's] success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir.1998).

The plaintiff contends that the facts and circumstances of this case satisfy each of these four elements at this time. The debtor disagrees.

### A. *Likelihood of success on the merits.*

The likelihood of success element "requires a clear and specific showing of likely success" on the merits. *Dore*, 54 B.R. at 358. The court previously found "that the plaintiff is likely to prevail in her contention that the actions of the defendants in attacking orders of this court in the Court of Common Pleas of Philadel-

phia, Orphans' Court Division, and in the Eastern District of Pennsylvania, and in seeking the relief sought there, absent this court's prior approval, are contrary to settled law as contained in the *Carter* case." *Lickman,* 282 B.R. at 722, App. A.

Since that time, the court has conducted a lengthy trial on the merits of the adversary proceeding at which voluminous exhibits and extensive testimony have been presented. In addition, the court has conducted other evidentiary hearings of matters that have arisen subsequent to the trial. The court has now thoroughly reviewed the record in this case. The court, therefore, is now in an even better position to evaluate the likelihood of success on the merits than it was when it entered the preliminary injunction.

As to this, the defendants' actions squarely violate the provisions of 28 U.S.C. § 959 and the *Barton* doctrine in contravention of the settled authority of the circuit as contained in the *Carter* case. At this time, the trustee clearly has demonstrated that she has a likelihood of success on the merits of her claims. Accordingly, the plaintiff has established this element.

B. *Irreparable Harm.*

"Irreparable harm in the bankruptcy context refers to either irreparable harm to the interest of a creditor or irreparable harm to the bankruptcy estate. Of these two, irreparable harm to the bankruptcy estate ... is clearly of greatest relevance to the court." *Dore,* 54 B.R. at 357.

Indeed, "the central purpose of a preliminary injunction is to prevent irreparable harm. It is the threat of harm which cannot be undone which authorizes the exercise of this equitable power before the merits are fully determined." *Parks v. Dunlop,* 517 F.2d 785, 787 (5th Cir.1975). The provisions of 11 U.S.C. § 105(a) and

28 U.S.C. § 959(a) empower the bankruptcy court to enjoin the filing of actions against the trustee that have not first been authorized by the bankruptcy court. *Baptist Medical Center of New York v. Singh (In re Baptist Medical Center of New York),* 80 B.R. 637, 641 (Bankr.E.D.N.Y. 1987).

This court previously found that the debtor's threat to attack collaterally this court's jurisdiction and orders in Pennsylvania courts in derogation of settled law as set forth in *Carter* would, if unchecked, result in irreparable harm to the plaintiff and to the bankruptcy policy of the United States.

In *Carter,* the court explained the policy behind requiring a litigant to obtain leave of the bankruptcy court before initiating an action against the bankruptcy trustee:

If [the trustee] is burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, his work for the court will be impeded .... Without the requirement [of leave], trusteeship will become a more irksome duty, and so it will be harder for courts to find competent people to appoint as trustees. Trustees will have to pay higher malpractice premiums, and this will make the administration of the bankruptcy laws more expensive .... Furthermore, requiring that leave to sue be sought enables the bankruptcy judges to monitor the work of the trustees more effectively.

*Carter,* 220 F.3d at 1252–53, *quoting In re Linton,* 136 F.3d 544, 545 (7th Cir.1998). In *Carter,* our court of appeals squarely held that a litigant must *first* obtain leave from the bankruptcy court before suing a trustee in state or federal court on account of his or her official acts. *Id.* at 1253.

Subsequent events in this case have borne out the court's earlier determination

that, absent the preliminary injunction, there is a likelihood of irreparable harm to the estate. Indeed, the debtor has continued to pursue her collateral attacks on the trustee's bankruptcy court-approved sale in violation of the preliminary injunction— creating the very harm this court sought to avoid in issuing its preliminary injunction.

This is exactly the nightmare scenario described in *Carter*. The debtor is attempting to force the trustee to defend in a distant forum actions taken within the official scope of her duties. These and other actions of the debtor have resulted in the accumulation of administrative expenses that far exceed the assets of the bankruptcy estate. The bankruptcy estate is thus administratively insolvent and growing more so by the day. Yet, the trustee is compelled to protect a bankruptcy estate that cannot bear the costs of such defense. For example, the court determined that the trustee incurred $5,670 in attorney's fees as a direct consequence of the debtor's and Mr. Wiley's recent actions taken in violation of the preliminary injunction.[4] *Lickman*, 282 B.R. at 721. These are funds that the insolvent bankruptcy estate does not have.

The potential for irreparable harm in this scenario, however, goes far beyond the economic consequences to the estate. If the debtor is permitted to take the actions prohibited by the preliminary injunction, this and other courts would be required to devote valuable resources that are needed elsewhere. Most importantly, permitting the debtor to take the actions prohibited by the preliminary injunction would undermine the fundamental policies upon which the bankruptcy court's jurisdiction is founded.

In her motion, the debtor suggests that intervening events have occurred in the Pennsylvania courts that negate the likelihood of irreparable harm (Document No. 124, ¶ 18). Although the debtor does not specifically identify these events, it appears that she is referring to orders entered by the Pennsylvania courts denying her petitions or dismissing actions that she initiated there. The debtor attached copies of these orders to her motion to dissolve the preliminary injunction.

These orders do not negate the potential for irreparable harm. The irreparable harm occurs as a consequence of the debtor's initiation and prosecution of actions in a non-bankruptcy forum regardless of the debtor's ultimate success or failure of those actions. The fact that the debtor's actions are denied or dismissed, therefore, does not vitiate the harm caused to bankruptcy policy, the bankruptcy court's jurisdiction, or to the trustee and to the estate in having to defend against them.

In addition, the denial or dismissal of the debtor's actions does not preclude the debtor from taking further action. This point is well illustrated by the plaintiff's recent filing of her motion for contempt that is based in part on the debtor's subsequent appeal of the Pennsylvania probate court's order denying the debtor's petition to that court.

It is apparent that the potential for irreparable harm continues and remains acute. Accordingly, the plaintiff has established that there is a continuing potential for irreparable harm.

### C. *Balance of Harm.*

 This element requires a balancing of the relative harm as between the

---

4. It is clear that these costs and expenses would be greater in the absence of the preliminary injunction. In other words, the preliminary injunction has enabled the trustee to reduce her costs and expenses in defending against the debtor's collateral attacks.

plaintiff and the defendants. *Dore*, 54 B.R. at 358. The court addressed the harm to the plaintiff in Section II.B. above. The debtor argues that she is being harmed by the preliminary injunction because the Pennsylvania probate court has relied upon that injunction and subsequent orders of this court in determining that she has no standing in the probate case. In balancing the relative harm as to each party, the court must agree with the plaintiff that the debtor "cannot be harmed by a prohibition from doing that which she is not permitted to do in the first place." (Document No. 127).

Indeed, the adverse orders about which the debtor complains would not have been entered had the debtor complied with the preliminary injunction. The Pennsylvania probate court entered those orders on the basis of actions taken by the debtor in violation of the preliminary injunction.

In these circumstances, the balance of harm continues to favor the plaintiff at this time.

### D. *Public policy.*

▆▆▆▆ This element "requires a balancing of the public interest in [protecting the bankruptcy process] with other competing social interests." *Dore*, 54 B.R. at 359. In Section II.B. above, the court identified the public policies that justify the court's ability to enjoin actions against the trustee from being initiated in other forums.

The debtor argues that the public policy interests in protecting the probate court's jurisdiction over the probate matters before it outweighs the public policy interest advanced by the plaintiff. The debtor's argument is spurious.

Section 105(a) of the Bankruptcy Code "is an 'expressly authorized' exception to the Anti–Injunction Act" cited by the debt-

or. *Baptist Medical Center of New York*, 80 B.R. at 641. "As Collier observes, '[t]he basic purpose of the section [§ 105] is to enable the [bankruptcy] court to do whatever is necessary to aid its jurisdiction, i.e., anything arising in or relating to a bankruptcy case.'" *Id., quoting* 2 *Collier on Bankruptcy*, ¶ 105.02 at 102.03 (15th ed.1987). "The Bankruptcy Court may also enjoin state court proceedings under 28 U.S.C. § 959." *Id.* Accordingly, the bankruptcy court's ability to enjoin actions that interfere with its jurisdiction or that "threaten the integrity of a bankrupt's estate" is well-recognized throughout the nation. *See Stonington Partners, Inc. v. Lernout & Hauspie Speech Products, N.V.,* 310 F.3d 118, 127 (3d Cir.2002)[federal "courts may enter an anti-suit injunction ... when needed 'to protect jurisdiction or an important public policy'"].

These principles apply even where the state court has limited jurisdiction to consider the matters before it. For example, in *Schieffler v. Pulaski Bank and Trust Co. (In re Molitor),* 183 B.R. 547, 553 (Bankr.E.D.Ark.1995), the court held that the bankruptcy court's jurisdiction extends to property of the estate that is part of a probate estate. The court determined that the automatic stay applies to probate proceedings insofar as they impact property of the bankruptcy estate. *Id. See also Markham v. Allen,* 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256 (1946)[federal court may exercise its jurisdiction to adjudicate rights in property within the state court's possession so long as it does not interfere with the state court's possession of that property save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court]. In this way, the federal rights afforded by the Bankruptcy Code are consistently applied and protected throughout the nation.

The preliminary injunction entered by this court is in harmony with these principles. It is narrowly drawn to prohibit the debtor and Mr. Wiley from taking or prosecuting actions that the law does not permit them to take without first obtaining leave of this court. It protects the integrity of the debtor's bankruptcy estate and the bankruptcy process. It does not usurp the Pennsylvania courts' jurisdiction over the matters before them or prohibit them from acting on those matters. This is readily apparent from the Pennsylvania courts' entry of orders on papers that this court has determined were filed in violation of the preliminary injunction.

The court concludes, therefore, that the plaintiff has established that the balancing of public policy is in favor of furthering and supporting bankruptcy policy at this time.

## III.

### Conclusion

For the reasons stated above, the court determines that the record before it at this time establishes each of the elements necessary to justify the continuation of the court's preliminary injunction. The debtor has alleged or presented no facts that would require a contrary result. Accordingly, the debtor's motion to dissolve the preliminary injunction is denied.